**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **SE PROPERTY HOLDINGS, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION 15-0033-WS-C** |
| ) | |
| **TAMMY T. CENTER,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

This matter comes before the Court on defendants' Motion to Stay Proceedings Pending Resolution of Mobile County Circuit Court Action (doc. 22).  The Motion has been briefed and is now ripe.

**I.      Procedural History.**

On January 23, 2015, plaintiff, SE Property Holdings, LLC ("SEPH"), brought this fraudulent transfer action against various defendants, including Tammy T. Center, in her individual capacity and as personal representative of the Estate of Charles H. Trammell; Belinda R. Trammell; Amy T. Brown; Trammell Family Orange Beach Properties, LLC; and Trammell Family Lake Martin Properties, LLC.[1]  The Complaint alleges that Charles and Belinda Trammell executed loan guaranties for many hundreds of thousands of dollars in loans made by SEPH's predecessor (as well as all attorney's fees incurred in collecting the debts) for a failed commercial development project.  After SEPH (and/or its predecessor) brought claims against Mr. and Mrs. Trammell under the guaranty agreements, the Complaint alleges, Mr. and Mrs. Trammell conveyed their interest in certain assets (including a condominium unit at Perdido

---

[1]      For convenience's sake, defendants will be collectively referred to herein as the "Trammells."  To distinguish defendants collectively from Charles and Belinda Trammell (the alleged debtors), the latter will be referred to as "Mr. and Mrs. Trammell."  Also, Charles Trammell is now deceased, such that the appropriate named defendant for Charles Trammell's interests in this case is Tammy T. Center, as Personal Representative of the Estate of Charles H. Trammell.  That defendant will be referred to herein as the "Estate."

Place, a house at Lake Martin and UPS stock) to the other defendants, who are their daughters and LLCs owned and/or controlled by those daughters.  SEPH's theory of relief is that these transfers of property constitute actual and constructive fraudulent transfers, in violation of Alabama Code §§ 8-9A-4(a), 8-9A-4(c) and 8-9A-5(a), and that defendants unlawfully conspired to plan and participate in such fraudulent transfers to frustrate SEPH's ability to collect from Mr. and Mrs. Trammell under the guaranty agreements.

This case is not the only lawsuit involving SEPH, Mr. and Mrs. Trammell and the subject commercial development loans.  Another action, styled *Vision Bank v. Bama Bayou, LLC, et al.*, CV 2009-900085.00 (the "*Bama Bayou* Action"), has been pending in the Circuit Court of Mobile County, Alabama, since 2009.  Joined in the *Bama Bayou* Action are claims between SEPH and approximately two dozen purported debtors / guarantors (including Mr. and Mrs. Trammell) of those loans.  Among the issues being litigated in the *Bama Bayou* Action are whether Mr. and Mrs. Trammell are indebted to SEPH, or whether SEPH's enforcement efforts are precluded on grounds of unconscionability, lack of performance by SEPH, breach of duties of good faith and fairness in connection with foreclosure sales for the subject real property, lack of any deficiency that might trigger guaranty obligations, gross negligence, bad faith, and so on. The *Bama Bayou* Action remains ongoing in state court more than six years after its inception, although the Trammells represent that "SEPH and the investor/guarantors have pursued extensive discovery" and that it is "anticipate[d] that a hearing to resolve several dispositive issues will be scheduled for the very near future."  (Doc. 22-1, at 6.)

Further adding to the litigation morass, another lender, FNB Bank, filed a fraudulent transfer action against the exact same defendants named in this case relating to the same underlying indebtedness in an action styled *FNB Bank v. Tammy T. Center, et al.*, No. 05-CV-2015-900098.00 (the "*FNB Bank* Action").  The *FNB Bank* Action was filed in the Circuit Court of Baldwin County, Alabama, on January 26, 2015, just three days after SEPH commenced this federal litigation against the Trammells.  The Complaint filed in the *FNB Bank* Action is virtually identical in many respects to that filed by SEPH here.  (*Compare* doc. 1 *with* doc. 20, Exh. A.)  FNB Bank seeks to invalidate the same transfers of property by Mr. and Mrs. Trammell to their daughters and certain LLCs, based on the same underlying indebtedness and using the same fraudulent transfer theories under Alabama law.  Defendants' motion to stay the

*FNB* Action pending final disposition of the *Bama Bayou* Action was denied by Circuit Judge Norton on July 29, 2015.  (Doc. 27, Exh. B at 11.)

Defendants now ask the Court to stay these proceedings pending conclusion of the *Bama Bayou* Action pursuant to the abstention principles established in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).  SEPH opposes the request for stay.

**II.    Analysis.**

"The *Colorado River* doctrine of 'exceptional circumstances' authorizes a federal district court to dismiss or stay an action when there is an ongoing parallel action in state court." *Moorer v. Demopolis Waterworks and Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004) (citation and internal quotation marks omitted).  "The principles of this doctrine rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.*  The Eleventh Circuit has cautioned, however, that "*Colorado River* abstention is particularly rare" among abstention doctrines, under which abstention is rarely approved to begin with.  *Jackson-Platts v. General Elec. Capital Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013).  This is so because "the pendency of an action in the state court is no bar to proceedings concerning the same matter in federal court," and because "the federal courts have a virtually unflagging obligation to exercise their jurisdiction." *Id.* (citation and internal quotation marks omitted); *see also Moorer*, 374 F.3d at 997 (federal court may utilize *Colorado River* abstention principles to "defer to a parallel state proceeding under 'limited' and 'exceptional' circumstances") (citation omitted).

In determining whether to abstain from exercising federal jurisdiction under *Colorado River*, one must first examine the threshold requirement that there be "a parallel state action, which is one involving substantially the same parties and substantially the same issues." *Jackson-Platts*, 727 F.3d at 1140 (citation and internal quotation marks omitted).  "Where there are parallel federal and state proceedings, abstention under the *Colorado River* doctrine is still only warranted in exceptional circumstances." *Id.* at 1141.  Among the factors to be weighed in determining whether the requisite "exceptional circumstances" exist are the following:

"(1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal

litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties."

*Moorer*, 374 F.3d at 997 (citations omitted). "No single factor is dispositive, and we are required to weigh the factors with a heavy bias favoring the federal courts' obligation to exercise the jurisdiction that Congress has given them." *Jackson-Platts*, 727 F.3d at 1141. That said, "[o]ne factor alone can be the sole motivating reason for the abstention" in a particular case. *Moorer*, 374 F.3d at 997. "Finally, we apply these factors flexibly and pragmatically, not mechanically." *Jackson-Platts*, 727 F.3d at 1141.

As noted, the threshold inquiry for *Colorado River* abstention purposes is whether the *Bama Bayou* Action qualifies as a "parallel state action." Defendants reason that the requirement of parallelism is satisfied because "the parties and issues are intertwined and substantially similar, to the extent that the existence of the alleged debtor-creditor relationship which is the backbone of SEPH's fraudulent transfer claim in this case is contingent upon the outcome of the Mobile County Circuit Court proceeding." (Doc. 22-1, at 13.) This point resonates. SEPH and Mr. and Mrs. Trammell are parties to both the federal and the state proceedings, and there is overlap between the two actions on a central issue. As this Court has previously recognized, "an essential element of proof in SEPH's fraudulent transfer causes of action is that it has a 'right to payment' from the Estate and Belinda Trammell." (Doc. 21, at 4.) That "right to payment" issue (*i.e.*, whether the Estate and Mrs. Trammell are liable to SEPH for breach of the guaranty agreements) is being litigated between SEPH and Mr. and Mrs. Trammell in the *Bama Bayou* Action. Given this direct intersection of parties and issues, the undersigned is satisfied that these two actions involve substantially the same parties and substantially the same issues, such that the *Bama Bayou* Action constitutes a parallel state action.[2]

---

[2]     In arguing otherwise, SEPH emphasizes that the two cases diverge as to various issues, parties, and requests for relief. (Doc. 27, at 7-8.) While SEPH's characterization of the two cases is not wrong, its argument would insist on a degree of similarity that courts applying *Colorado River* abstention have not required. *See generally Ambrosia Coal and Const. Co. v. Pages Morales*, 368 F.3d 1320, 1329-30 (11th Cir. 2004) (rejecting as "formalistic" a litigant's argument that "*Colorado River* abstention is permissible only when the relevant federal and state cases share *identical* parties, issues and requests for relief"); *SE Property Holdings, LLC v. Parks*, 2014 WL 3687226, *3 (S.D. Ala. July 24, 2014) (deeming federal fraudulent transfer action and state collection action to be parallel even though parties in federal case were just three of more than 50 parties in the state court proceedings, and even though relief sought was (Continued)

Having found that the requirement of parallel actions is satisfied, the Court now turns to application of the six *Colorado River* factors.  For this exercise, defendants rely heavily on two previous decisions from this District Court that, coincidentally, were decided exactly eight years apart, to-wit: *SE Property Holdings, LLC v. Parks*, 2014 WL 3687226 (S.D. Ala. July 24, 2014) (DuBose, J.), and *Stabler v. Transportation Ins. Co.*, 2006 WL 6915489 (S.D. Ala. July 24, 2006) (Steele, J.).  (*See* doc. 22-1, at 23-26; doc. 28, at 2-4, 13-14.)  Boiled down to its essence, defendants' position is that the *Colorado River* factors should be applied in this case exactly as they were in *Parks* and *Stabler*, and that doing so leads inexorably to the conclusion that *Colorado River* abstention is appropriate to avoid risking inconsistent results, wasting judicial resources, burdening the Trammells with a war on two fronts, and playing catch-up to state-court litigation that has already enjoyed a six-year head start.

The trouble with defendants' proffered argument is that it overlooks the game-changing import of the *FNB Bank* Action in the *Colorado River* calculus.  Defendants suggest that the options here are (i) to allow this action to proceed contemporaneously with the *Bama Bayou* Action; or (ii) to stay this case, such that *Bama Bayou* Action will move forward alone. However, that is not the relevant comparison.  The real choices here are (i) to allow this action to proceed contemporaneously with both the *Bama Bayou* Action and the *FNB Bank* Action; or (ii) to stay this action, such that *Bama Bayou* Action and the *FNB Bank* Action will move forward without SEPH being able to litigate its fraudulent transfer claims against the Trammells until some later date.  As we will see, the distinction has profound consequences for the *Colorado River* analysis, including at least two factors that are pivotal here.

Perhaps defendants' most compelling argument for *Colorado River* abstention is that inefficiency and duplication would ensue if the "right to payment" issue were to be litigated in both this case and the *Bama Bayou* Action at the same time.  However, this contention is attenuated by the existence and persistence of the *FNB Bank* Action.  In addition to executing payment guaranties in favor of SEPH's predecessor as to the Bama Bayou loans, the Trammells also executed guaranties in favor of FNB Bank's predecessor as to a loan to Marine Park, LLC at

---

different, where the "validity and enforceability of the Parks' guarantee agreements will dictate the results" in both cases).

or around the same time that they executed the Bama Bayou guaranties.  Just as SEPH filed this action to set aside alleged fraudulent transfers by the Trammells to collect on the Bama Bayou loan guaranties, so did FNB Bank file the *FNB Bank* Action to set aside those same alleged fraudulent transfers to collect on the Marine Park loan guaranties.  The Complaints in the two cases (which commenced a scant three days apart) are nearly verbatim, involving identical claims against identical defendants, with large chunks of verbiage seemingly cut and pasted from one pleading to the other.  (*Compare* doc. 1 *with* doc. 20, Exh. A.)  The state court in the *FNB Bank* Action denied the Trammells' motion to stay that action pending the conclusion of the *Bama Bayou* Action; thus, the *FNB Bank* Action is presently moving forward.

The pragmatic implications of these circumstances are that the Trammells are faced with litigating the "right to payment" issue in two different cases (the *Bama Bayou* Action and the *FNB Bank* Action) regardless of whether the undersigned abstains under *Colorado River* or not. Either way, the defendants in our case will be litigating their arguments against enforcement of their guaranty agreements (and the creditors will be litigating their arguments in favor of enforcement of those agreements) in two ongoing cases at the same time.  What's more, SEPH asserts (with no dissent from the Trammells) that discovery may be conducted jointly in both this case and the *FNB Bank* Action in the absence of a stay, and points out that FNB Bank, SEPH and the Trammells have all agreed to conduct joint discovery in that event.  (Doc. 27, at 12 & n.5.)[3]

---

[3]     At most, defendants balk that joint discovery will be of scant benefit, because "depositions are only a small part of the resources required of the Defendants to prove the same affirmative defenses and counterclaims in two separate actions."  (Doc. 28, at 12.)  Closer examination of this statement reveals its weaknesses.  Certainly, it is true that much more goes into litigating a case than merely taking depositions.  There is every reason to believe, however, that paper discovery could and would be coordinated between this action and the *FNB Bank* Action to minimize duplication of effort and redundancy.  More importantly, the Trammells concede that they are advancing "the same affirmative defenses and counterclaims" in both cases.  Thus, it appears highly likely that, in briefing those issues, the Trammells will be able to deploy substantially similar legal memoranda that are simply tweaked or adapted from one case to the other.  The point is this:  The Trammells have presented neither evidence nor persuasive argument that the incremental burden of litigating their identical "affirmative defenses and counterclaims" in both this case and the *FNB Bank* Action contemporaneously would be substantially greater than litigating those issues in the *FNB Bank* Action alone.  That conclusion is reinforced when one factors in the *Bama Bayou* Action, and the likelihood that both discovery and legal memoranda prepared in that case may be adapted to fit the other two cases without subjecting defendants to the financial and temporal burdens of reinventing the wheel.

In short, it does not appear (and defendants have not demonstrated) that the marginal burden to the Trammells of moving forward in this action will be sufficiently severe to warrant *Colorado River* abstention, particularly when considered in light of the work that the Trammells are already having to do in litigating these same issues in the *FNB Bank* Action.

Defendants' other potentially persuasive argument for *Colorado River* abstention is that they would be prejudiced if this action were to proceed, while SEPH would not be prejudiced if this action were to be stayed pending the outcome of the *Bama Bayou* Action. Once again, however, the *FNB Bank* Action undermines the Trammells' position. Any prejudice to defendants is mitigated by the fact they are litigating these fraudulent transfer issues (including the "right to payment" threshold question) in the *FNB Bank* Action already, and those litigation activities can be combined, coordinated or at least streamlined between these two cases. By contrast, the prejudice to SEPH of staying this action is potentially severe. Consider what would happen if (a) this case were stayed, (b) the *Bama Bayou* Action were resolved in a manner that vindicated SEPH's right to payment, and (c) in the interim, the *FNB Bank* Action were resolved in favor of FNB Bank on the question of fraudulent transfers. What would stop FNB Bank from, in SEPH's words, "swoop[ing] in to recover what is left before SEPH ever gets its day in court"? (Doc. 27, at 5.) After all, in that scenario, SEPH would still have to litigate its fraudulent transfer claims in their entirety in this case, with this action having been stayed before it ever left the starting blocks; meanwhile, FNB Bank would have already won its fraudulent transfer case against the Trammells, and would be poised to initiate collection activity without delay. Defendants provide no satisfactory assurances that SEPH's interests could or would be adequately protected in that event.[4]

---

[4] At best, defendants argue that "FNB cannot collect before a judgment issues in the *Bama Bayou* case, so contrary to SEPH's argument, SEPH's ability to collect would not be prejudiced if the FNB fraudulent transfer action were to move forward." (Doc. 28, at 4.) But this contention misses the point. If this case were stayed, both the *Bama Bayou* Action and the *FNB Bank* Action would continue moving forward. It is entirely possible that FNB Bank would have already received a favorable judgment in its fraudulent transfer action against the Trammells before judgment issues in the *Bama Bayou* Action. In that event, when the *Bama Bayou* judgment issues, FNB Bank would already have a fraudulent transfer judgment in the *FNB Bank* Action and would be ready to execute on the Trammells' assets immediately. Meanwhile, SEPH would remain stuck at square one in this case because of the *Colorado River* abstention and would be unable to take any action vis a vis the transferred property to collect on (Continued)

-7-

Applying these considerations (as well as all others) to the *Colorado River* factors, the Court concludes as follows:  The "jurisdiction over property" factor is neutral because, as both sides recognize, neither court has asserted jurisdiction over the subject real property and stock certificates.  The "relative inconvenience of the fora" factor weighs against abstention because this District Court and the Mobile County Circuit Court (where the *Bama Bayou* Action is pending) are equally convenient.  The "piecemeal litigation" factor does not strongly favor abstention because (i) piecemeal litigation will be happening anyway thanks to the *FNB Bank* Action, (ii) coordination of discovery and adaption of legal memoranda will minimize the deleterious effects of piecemeal litigation, and (iii) staying this action could actually exacerbate the piecemeal nature of the litigation by having relevant issues litigated at three different times in three different fora in three different cases.[5]  The "order in which jurisdiction was obtained and relative progress" factor favors abstention, but only weakly.  All indications are that the *Bama Bayou* Action is large, cumbersome and perhaps even unwieldy, given the dozens of litigants and six years' pendency on the state-court docket, as well as defendants' failure to identify any tangible progress in that action towards a final resolution of the "right to payment" question.  No light at the end of the tunnel appears visible in the *Bama Bayou* Action.  Next, the "rule of

_____

the *Bama Bayou* judgment until such time as this case proceeded to judgment.  The potential prejudice to SEPH in that scenario resulting from a grant of *Colorado River* abstention in this case would be substantial.

    [5]    Also, on the subject of piecemeal litigation, it bears mentioning that regardless of whether the "right to payment" issue is first decided in this case or in the *Bama Bayou* Action, a compelling argument could be made that issue preclusion principles will render it unnecessary to have that same issue be litigated and decided separately in the other case.  *See, e.g., Ex parte Flexible Products Co.*, 915 So.2d 34, 45 (Ala. 2005) (under Alabama law, collateral estoppel, or issue preclusion, "is an equitable defense interposed against a party attempting to relitigate an issue that has been resolved in an earlier case involving the same parties," and is available when the issue was identical, it was actually litigated, and its resolution was necessary to the prior judgment); *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1036 (11th Cir. 2014) ("a federal court must give preclusive effect to a state court judgment to the same extent as would courts of the state in which the judgment was entered") (citations and internal quotation marks omitted).  Thus, defendants' concerns about "an extraordinary risk of incompatible and deleterious results" (doc. 22-1, at 26) appear overblown, based on the likelihood that issue preclusion principles will prevent such an outcome.

decision" factor does not favor abstention here.[6]  Finally, the "adequate protection of rights" factor cuts decisively against abstention.  As discussed *supra*, the pendency of the *FNB Bank* Action and the resulting prejudice to SEPH if this action is stayed means that the state courts may not adequately protect SEPH's interests if *Colorado River* abstention is applied here.

In light of the foregoing discussion, and in recognition of the "limited" and "exceptional" nature of *Colorado River* abstention, as well as the heavy bias in favor of exercising jurisdiction, the Court is of the opinion that abstention is not warranted here.  Under the circumstances as they now exist (including specifically the pendency of the ongoing *FNB Bank* Action), considerations of wise judicial administration favor allowing this case to move forward, with the parties to engage in joint discovery to the extent reasonably practicable.  By contrast, abstaining in this case for an indefinite time until *Bama Bayou* is decided may not substantially reduce the risk of piecemeal litigation, but it will unacceptably increase the risk of unfair prejudice to SEPH from which the state courts likely cannot adequately protect it.  Always in the *Colorado River* abstention context, "the balance [is] heavily weighted in favor of the exercise of jurisdiction." *Moorer*, 374 F.3d at 997 (citation omitted).  The Trammells have not met their burden of overcoming that heavy weight to establish that abstention is appropriate or desirable here.

One final point is warranted:  The Court's determination that *Colorado River* abstention would be unwise in these circumstances is dependent on the status of the *FNB Bank* Action as an ongoing, active matter in state court.  Defendants have urged the Court to disregard the *FNB Bank* Action because they filed a Petition for Writ of Mandamus (the "Mandamus Petition") with the Alabama Supreme Court in that case on August 25, 2015, requesting entry of "an order staying the trial court proceedings pending resolution of the *Bama Bayou* action by the Circuit Court of Mobile County." (Doc. 28, Exh. B, at 12.)[7]  Based on the Mandamus Petition,

---

[6]       To be sure, state law does provide the rule of decision for all of SEPH's fraudulent transfer claims interposed herein.  "But this factor favors abstention only where the applicable state law is particularly complex or best left for state courts to resolve." *Jackson-Platts*, 727 F.3d at 1143.  Defendants have identified – and the Court is aware of – no aspects of Alabama's fraudulent transfer law that are particularly complex, or that might raise thorny and difficult state-law questions best deferred to the Mobile County Circuit Court in *Bama Bayou*.

[7]       The referenced Mandamus Petition actually marks the Trammells' second Petition for Writ of Mandamus filed in the Alabama Supreme Court in the *FNB Bank* Action in the span of three weeks.  On August 4, 2015, the Trammells sought a writ of mandamus in that case based (Continued)

defendants maintain that it is "speculative" for SEPH to complain of prejudice if this action is stayed whilst the *FNB Bank* Action moves forward.  (Doc. 28, at 2.)  After all, defendants say, "[t]he Alabama Supreme Court consistently has found a stay appropriate where the issues overlap to the extent that the outcome of a pending litigation will determine how a later-filed litigation proceeds."  (*Id.*)

The undersigned is not so sanguine as to the Trammells' odds of success on their Mandamus Petition.  Alabama law is well settled that "[a] writ of mandamus is an extraordinary remedy … that should be granted only if the trial court clearly abused its discretion by acting in an arbitrary or capricious manner," and that requires a petitioner to prove, *inter alia*, "a clear legal right … to the order sought."  *Ex parte Edwards*, 727 So.2d 792, 794 (Ala. 1998) (citations omitted).  In both their briefs in this case and the Mandamus Petition itself, the Trammells argue only that binding Alabama authorities have "found a stay appropriate" in similar circumstances.  To say that a stay is "appropriate" does not appear tantamount to saying that a stay is "mandatory" or "required," that a petitioner has "a clear legal right" to a stay, that the trial court acted in an "arbitrary and capricious manner" by declining to enter a stay, or that the drastic and extraordinary remedy of mandamus is properly granted to override the trial court's determination.  Given applicable law emphasizing the stringent legal standard for mandamus juxtaposed against the discretionary standard for entry of a stay under Alabama law, it appears to this Court that if anyone is "speculating" as to the future of the *FNB Bank* Action, it is the Trammells in predicting that "the FNB fraudulent transfer case will not proceed immediately, but should be stayed by the Alabama Supreme Court."  (Doc. 28, at 12.)  Under the circumstances, the Court declines to assume (as the Trammells would have it do) that the Mandamus Petition will be granted, that the *FNB Bank* Action will be stayed, and that SEPH's concerns about

---

on the trial court's failure to transfer the *FNB Bank* Action to Mobile County or Montgomery County.  (Doc. 28, Exh. A.)  Although they cite it here, defendants' mandamus petition on the issue of venue in the *FNB Bank* Action does not meaningfully play into the *Colorado River* analysis.  The determination as to the Alabama county in which the *FNB Bank* Action proceeds does not have any bearing, one way or the other, on the abstention calculus in this case.  The Trammells have not shown otherwise.  Nor are the nearly 600 pages of exhibits accompanying the mandamus petition concerning venue (all of which the Trammells have filed in this case) helpful here.

prejudice and avoiding piecemeal litigation through coordinated discovery are merely "speculative."[8]  In other words, the undersigned will neither assume away the *FNB Bank* Action for purposes of the *Colorado River* analysis here, nor ignore the long shadow it casts in evaluating the equities of the situation, the path of wise judicial administration, and the propriety of abstention.

**III.    Conclusion.**

For all of the foregoing reasons, defendants' Motion to Stay Proceedings Pending Resolution of Mobile County Circuit Action (doc. 22) is **denied**.  This action is **referred** to Magistrate Judge Cassady for issuance of a Preliminary Scheduling Order and entry of a Rule 16(b) Scheduling Order.

DONE and ORDERED this 25th day of September, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[8]        That said, this Court does not presume to make an anticipatory ruling on behalf of the Alabama Supreme Court as to the ultimate fate of the Mandamus Petition.  The point is a different one altogether, to-wit:  At this time, the *FNB Bank* Action is a live, active, ongoing lawsuit whose effect on the *Colorado River* factors in this case is profound.  The information presently before the Court suggests that the status of the *FNB Bank* Action as an active, ongoing matter is unlikely to change in the immediate future.  Therefore, the Court's ruling is being made on reliance on the present status of that case.  Should circumstances change (*i.e.*, if the Alabama Supreme Court grants the Mandamus Petition and forces the *FNB Bank* Action to be stayed pending the outcome of the *Bama Bayou* Action), the Trammells are free to renew their motion for *Colorado River* abstention in this case.  The Court declines to speculate at this time as to how the *Colorado River* factors' application might change if the *FNB Bank* Action were placed in suspended animation pending the *Bama Bayou* result; instead, the undersigned will invite briefing from the parties in that event to sort through the shifted procedural landscape.