**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SE PROPERTY HOLDINGS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 15-0033-WS-C** |
| | ) | |
| **TAMMY T. CENTER,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter comes before the Court on plaintiff's Motion for Leave to Amend Complaint (doc. 49). The Motion has been briefed and is now ripe for disposition.

**I.   Background.**

Plaintiff, SE Property Holdings, LLC ("SEPH"), brought this action against a half dozen defendants seeking to void certain property transfers between and among them. In the Complaint, SEPH asserts claims for actual and constructive fraudulent transfer, in violation of Alabama Code §§ 8-9A-4(a), 8-9A-4(c) and 8-9A-5(a), as well as a cause of action for conspiracy. (*See* doc. 1.) In summary, the claims enumerated in the Complaint allege that Charles and Belinda Trammell became indebted to SEPH via a promissory note and guaranties, then fraudulently transferred certain assets (a house on Lake Martin, a Perdido Place condominium unit, UPS stock and other securities, as well as their interests in family-held LLCs) to other defendants through direct and/or indirect means, thereby frustrating SEPH's collection efforts and evading Mr. and Mrs. Trammell's indebtedness to SEPH.[1]

On March 8, 2016, SEPH timely moved for judicial leave to amend its pleading pursuant to Rule 15(a)(2), Fed.R.Civ.P. The proposed First Amended Complaint would address certain additional purportedly fraudulent transfers by Charles Trammell, and would incorporate such

---

[1]     The Complaint alleges that, while both of the Trammells were indebted to SEPH, Charles Trammell's indebtedness far surpassed Belinda Trammell's because of the particular guaranties (and note) he had signed.

new factual allegations into the existing causes of action.  In particular, the First Amended Complaint would allege as follows: "At his death, Mr. Trammell or his Estate transferred additional securities and his principal residence [located in Montgomery, Alabama] to Belinda, leaving the Estate with a value of less than $200,000.00."  (Doc. 49, Exh. A, ¶ 24.)  The amended pleading would also include as part of each fraudulent transfer claim an allegation that the statute was violated by the "[t]ransfer at death of Mr. Trammell's principal residence … and his remaining securities and/or prior to his death by signing documents and/or doing other things to cause such assets to be transferred upon his death."  (*Id.*, ¶¶ 32(d), 37(d), 44(d).)  SEPH would also plead new allegations to update the status of the Estate's debt.

Defendants object to multiple aspects of the proposed amendment on futility grounds.

## II.   Analysis.

The Federal Rules of Civil Procedure provide that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Rule 15(a)(2), Fed.R.Civ.P.  "The thrust of Rule 15(a) is to allow parties to have their claims heard on the merits, and accordingly, district courts should liberally grant leave to amend when the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief."  *In re Engle Cases*, 767 F.3d 1082, 1108 (11th Cir. 2014) (citation and internal quotation marks omitted).

"Although leave to amend shall be freely given when justice so requires, a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment."  *Mann v. Palmer*, 713 F.3d 1306, 1316 (11th Cir. 2013) (citation omitted); *see also Andrx Pharmaceuticals, Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1236 (11th Cir. 2005) ("Leave may be denied because of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.") (citation and internal quotation marks omitted).  In light of the relaxed Rule 15(a) standard, however, "[d]istrict courts have limited discretion in denying leave to amend, and should grant a motion to amend unless there are substantial reasons to deny it."  *Bowers v. U.S. Parole Com'n, Warden*, 760 F.3d 1177, 1185 (11th Cir. 2014) (citation and internal marks omitted).

As noted, defendants couch their objections to the Motion for Leave to Amend in the vernacular of futility.  Without a doubt, district courts may deny leave to amend a pleading pursuant to Rule 15(a) "when such amendment would be futile."  *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1263 (11th Cir. 2004).  Binding precedent instructs that "denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (citation and internal quotation marks omitted); *see also SFM Holdings, Ltd. v. Banc of America Securities, LLC*, 764 F.3d 1327, 1344 (11th Cir. 2014) ("denial on grounds of futility is essentially a holding that the proposed amended complaint fails to state a claim upon which relief can be granted"); *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) ("A proposed amendment may be denied for futility when the complaint as amended would still be properly dismissed.") (citation and internal quotation marks omitted).  This is because "justice does not require district courts to waste their time on hopeless cases."  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008).

Defendants maintain that the proposed amendments embodied in SEPH's First Amended Complaint are futile because the purported transfers of Charles Trammell's interest in his primary residence and certain securities to his wife upon his death do not constitute "transfers" within the meaning of the Alabama Uniform Fraudulent Transfer Act ("AUFTA"), and therefore cannot support viable AUFTA causes of action.  With regard to the Montgomery residence, defendants show that Charles and Belinda Trammell owned the home as joint tenants during Mr. Trammell's lifetime, and that his death "extinguished his interest in the property," but "did not … change Belinda Trammell's interest in the property."  (Doc. 51, at 5.)  In other words, defendants' position is that Charles and Belinda Trammell were joint tenants in the Montgomery residence, and that Mr. Trammell's death merely extinguished his own interest in the property, while effectuating no transfer of any such interest to Ms. Trammell.  As to the purported "additional securities" or "remaining securities" transferred to Ms. Trammell upon her husband's death, defendants would apply the same argument "[t]o the extent these alleged 'remaining securities' were held jointly with right of survivorship by Mr. and Mrs. Trammell."  (*Id.*)  On that basis, defendants reason that the proposed amended AUFTA claims relating to these events are futile because they simply do not constitute actionable "transfers" within the meaning of the statute.

-3-

With regard to the Trammells' primary residence, SEPH correctly points out that the definition of "transfer" in the AUFTA is quite broad.  Specifically, the statute defines "transfer" as including "[e]very mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes … release."  Ala. Code § 8-9A-1(13).  By the plain language of § 8-9A-1(13), Charles Trammell's act of parting with his interest in the Montgomery residence via his death would appear to constitute a "transfer" within the meaning of the AUFTA.  Stated differently, the factual allegations of the proposed First Amended Complaint support a plausible inference that Mr. Trammell's death was an involuntary mode of disposing of or parting with his interest in the home because, by operation of Alabama law, his death extinguished his interest as a joint tenant in the property. *See, e.g., McClung v. Green*, 80 So.3d 213, 215 (Ala. 2011) (where real property had been deeded to Virginia and Charles as joint tenants, "[a]bsent reformation, Charles's future interest in the property would have been extinguished upon his death, and Virginia would take sole possession"); *Porter v. Porter*, 472 So.2d 630, 632 (Ala. 1985) (in real estate context, "the interest held by joint tenants passes automatically to the last survivor").[2]  The extinguishment of Mr. Trammell's interest in the Montgomery home by operation of law upon his death would thus colorably fit within the AUFTA's expansive definition of a "transfer."[3]

---

[2]    Defendants readily acknowledge that "[t]he death of Charles Trammell extinguished his interest in the property."  (doc. 51, ¶ 7.)

[3]    In arguing otherwise, defendants rely heavily on a 1996 Nebraska Supreme Court decision, styled *Mahlin v. Goc*, 547 N.W.2d 129 (Neb. 1996).  The *Mahlin* court opined that Nebraska's version of the Uniform Fraudulent Transfer Act (which features a "transfer" definition identical to that recited in the AUFTA) does not reach the extinguishment by death of a joint tenant's interest in property.  The *Mahlin* court examined the statutory definition of "transfer," then reasoned that "nothing in this statutory language indicates a legislative intent to abrogate the operation of joint tenancy upon death.  Therefore, we are compelled to find that the definition of 'transfer' [in Nebraska's version of the UFTA] does not include the extinguishment of [the deceased joint tenant]'s interest in the property." *Id.* at 132.  The persuasive heft of *Mahlin* is attenuated by (i) the minimal reasoning set forth for the result reached, and the tension between that reasoning and the broad statutory text; (ii) the paucity of Alabama authority expressing agreement with such a proposition; and (iii) the existence of contrary decisions and commentaries from other jurisdictions also using the same or a similar "transfer" definition in their version of the Uniform Fraudulent Transfer Act.  *See, e.g., Gallagher v. Kirschner*, 220 A.D.2d 948, 949-50 (N.Y.A.D. 3 Dept. 1995) ("Even where the transfer occurs by operation of law upon the death of a joint tenant, a creditor may recover the interest transferred, as a (Continued)

The Court recognizes, of course, that the AUFTA's "transfer" definition does not exist in a vacuum.  Indeed, the AUFTA provides that "[u]nless displaced by the provisions of this chapter, the principles of law and equity … supplement its provisions."  Ala. Code § 8-9A-10. So if Alabama principles of law and equity would somehow forbid classifying a joint tenant's extinguishment by law of his interest in real property upon his death as a "transfer," then those principles would need to be weighed alongside the expansive definition of the term set forth in the AUFTA.  But defendants have not come forward with any such showing as to relevant Alabama principles of law and equity that may not have been displaced by the provisions of the AUFTA.  Nor have defendants established that the extinguishment of Charles Trammell's joint tenancy interest in the Montgomery home upon his death could not plausibly lie within the statute's broad definition of a "transfer."[4]

Such shortcomings are significant in light of the allocation of the burdens as to the Motion for Leave to Amend Complaint.  Specifically, defendants, as the parties advocating denial of the amendment on futility grounds, bear a heavy burden of showing that the proposed amendment is clearly futile.  *See, e.g., Harris v. Steadman*, --- F. Supp.3d ----, 2016 WL 562053, *2 (E.D. Pa. Feb. 11, 2016) ("given the liberal standard for the amendment of pleadings, courts place a heavy burden on opponents who wish to declare a proposed amendment futile") (citation omitted).[5]  Defendants have not met this heavy burden.  While the Court cannot and does not

---

fraudulent transfer, if it can be demonstrated that the transfer rendered the deceased debtor's estate insolvent.") (citations omitted); Thomas R. Andrews, *Creditors' Rights Against Nonprobate Assets in Washington: Time for Reform*, 65 Wash. L. Rev. 73, 97 (Jan. 1990) ("[A]t common law, no 'transfer' occurred at the death of the first joint tenant.  But the definition of 'transfer' in the UFTA, which depends upon the 'disposition of' or 'parting with' a beneficial interest, can be read as changing the common law of joint tenancies.") (footnote omitted).

[4]     If an AUFTA transfer occurred, of course, that event would appear subject to Alabama's statutory prohibitions against fraudulent transfers, and would therefore be actionable by SEPH here.

[5]     *See also Wizards of the Coast LLC v. Cryptozoic Entertainment LLC*, 309 F.R.D. 645, 649 (W.D. Wash. 2015) (in Rule 15 analysis, "the party opposing amendment has the burden of showing that amendment is not warranted"); *Lumetrics, Inc. v. Bristol Instruments, Inc.*, 101 F. Supp.3d 264, 268 (W.D.N.Y. 2015) ("The party opposing a motion to amend bears the burden of establishing that an amendment would be futile.") (citation omitted); *Mackley v. TW Telecom Holdings, Inc.*, 296 F.R.D. 655, 661 (D. Kan. 2014) ("The party opposing the (Continued)

decide conclusively on the limited briefs and fragmentary authorities presented that SEPH's fraudulent transfer theory relating to the Montgomery residence is cognizable and valid under the AUFTA, the Court likewise cannot conclude that this proposed amendment is clearly futile. Again, the breadth of the "transfer" definition under the AUFTA, the facial applicability of the AUFTA to the extinguishment by operation of law of Mr. Trammell's interest in the subject real property, the dearth of contrary Alabama authority identified by defendants, and the apparent lack of any consensus holdings by other jurisdictions that such circumstances do not qualify as a "transfer" under the Uniform Fraudulent Transfer Act all persuade the Court that SEPH has stated at least a plausible claim here. Accordingly, the procedurally proper (and most sensible) course of action is to allow the amendment, then reexamine the legal viability of this claim at a later time upon more developed briefing and, perhaps, a fleshed-out factual record.

As noted, defendants also advance a futility objection with regard to SEPH's proposed amendment of the Complaint to assert fraudulent transfer claims relating to the transfer of "remaining securities" or "additional securities" from Charles Trammell to Belinda Trammell upon the former's death. For these claims, defendants' futility argument is that they fail "[t]o the extent these alleged 'remaining securities' were held jointly with right of survivorship by Mr. and Mrs. Trammell." (Doc. 51, ¶ 8.) Nothing in the proposed First Amended Complaint alleges, or even suggests, that the Trammells' ownership of the subject securities took the form of a joint tenancy. Indeed, the First Amended Complaint alleges at least the possibility that the securities at issue were not jointly held by asserting that the purportedly fraudulent transfers were effectuated "prior to [Mr. Trammell's] death by signing documents and/or doing other things to cause such assets to be transferred upon his death." (Doc. 49, Exh. A, ¶¶ 32(d), 37(d), 44(d).) Simply put, the Court has no facts before it and no reason to believe that the "additional securities" or "remaining securities" referenced in the proposed First Amended Complaint were ever held by the Trammells as joint tenants. It would, accordingly, be inappropriate to bar those

---

proposed amendment bears the burden of establishing its futility.") (footnote omitted); *Dave v. District of Columbia*, 811 F. Supp.2d 111, 118 (D.D.C. 2011) ("The defendant bears the burden of proving the futility of the proposed claims.").

proposed claims as clearly futile by virtue of such a joint tenancy.  Defendants' objection is overruled.[6]

## III.   Conclusion.

For all of the foregoing reasons, plaintiff's Motion for Leave to Amend Complaint (doc. 49) is **granted**.  Pursuant to Civil L.R. 15(c), plaintiff is **ordered**, on or before **April 11, 2016**, to refile its First Amended Complaint as a freestanding pleading in substantially the same form as Exhibit A to its Motion.  Defendants' responsive pleading is due on or before **April 25, 2016**.

DONE and ORDERED this 6th day of April, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[6]   As a fallback position, defendants invoke the language of *Twombly* by arguing that "Plaintiff's allegations are 'threadbare recitals' and conclusory statements that are not entitled to the assumption of truth."  (Doc. 51, ¶ 9.)  SEPH was not obligated to plead the precise ownership structure of the "remaining securities," nor was it required to identify more specifically what those securities were.  On its face, the proposed First Amended Complaint states plausible claims for fraudulent transfer based on the new allegations that, at or before the time of Mr. Trammell's death, his interests in the Montgomery residence and certain securities were "transferred" within the meaning of the AUFTA.  Any additional factual elaboration that defendants seek can be readily ferreted out through the discovery process.