**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SE PROPERTY HOLDINGS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 15-0033-WS-C** |
| | ) | |
| **TAMMY T. CENTER, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter comes before the Court on defendants' Motion to Continue (doc. 102) and Renewed Motion to Stay (doc. 107), as well as their Supplement to Defendants' Motion to Continue (doc. 114). The Motions have been briefed and are ripe for disposition.

**I. Background.**

Plaintiff, SE Property Holdings, LLC ("SEPH"), brought this fraudulent transfer action against defendants nearly two years ago. The First Amended Complaint (doc. 55) alleges that Charles and Belinda Trammell guaranteed various loans made by SEPH's predecessor for a failed commercial development project from 2005 to 2007. SEPH's position is that both the Estate of Charles Trammell (who died in October 2013) and Belinda Trammell are currently indebted to SEPH to the tune of millions of dollars in principal, interest, and collection costs (including attorney's fees). For their part, the Trammells have denied liability. To resolve this dispute over the Trammells' guaranty obligations, if any, and in an attempt to recover under the subject loans and agreements, SEPH's predecessor, Vision Bank, sued Charles and Belinda Trammell, among others, in the Circuit Court of Mobile County, Alabama, in an action styled *Vision Bank v. Bama Bayou, LLC, et al.*, CV 2009-900085.00 (the "*Bama Bayou* Action"). The *Bama Bayou* Action was filed on or about January 16, 2009. It remains pending in Mobile County Circuit Court today. Notwithstanding defendants' representation that "*Bama Bayou* has made significant progress towards trial" (doc. 102, at 2), no trial date has been set and the timetable for resolution of those proceedings remains murky.

SEPH commenced this fraudulent transfer action in federal court in January 2015, some six years into the lifespan of the *Bama Bayou* Action. In the First Amended Complaint, SEPH asserts claims against defendants for actual fraudulent transfer under Alabama Code § 8-9A-4(a) (Count One), constructive fraudulent transfer under Alabama Code § 8-9A-4(c) (Count Two), constructive fraudulent transfer under Alabama Code § 8-9A-5(a) (Count Three), and conspiracy (Count Four). The transfers alleged to have been fraudulent include the following: (i) the transfer by the Trammells to defendant Trammell Family Orange Beach Properties, LLC ("Trammell Orange Beach"), of a Baldwin County condominium unit on January 26, 2011; (ii) the transfer by the Trammells to defendant Trammell Family Lake Martin Properties, LLC ("Trammell Lake Martin"), of a Lake Martin house on January 26, 2011; (iii) the transfer by the Trammells of 90% ownership/membership interest in Trammell Orange Beach and Trammell Lake Martin to defendants Tammy T. Center and Amy T. Brown in December 2011; (iv) the transfer by Charles Trammell in 2012 of UPS stock to Center, Brown, Trammell Orange Beach and/or Trammell Lake Martin; and (v) the transfer by Charles Trammell or his Estate of additional UPS stock and his principal residence to Belinda Trammell, reducing the Estate's value below $200,000. (Doc. 55, ¶¶ 17-24.)

This fraudulent transfer action has progressed toward trial in an orderly and efficient manner.[1] Discovery concluded in this matter in late September 2016. (*See* doc. 63.) Plaintiff's Motion for Partial Summary Judgment (doc. 90) was filed on September 30, 2016, and has now been adjudicated. The Final Pretrial Conference looms just days away, on January 10, 2017, with bench trial to follow in February 2017. (*See* doc. 35.) In short, this case is, for all practical purposes, ready for trial. The parties have never indicated that a February 2017 trial setting is not reasonably attainable, much less that any circumstances (whether intrinsic or extrinsic) might impede their ability to be ready for trial by February 2017.

[1] Defendants filed a Motion to Stay (doc. 22) in this action in July 2015, requesting that these proceedings be stayed pending a trial in the *Bama Bayou* Action. By Order (doc. 29) entered on September 25, 2015, however, the Court denied the Motion to Stay after careful examination of the *Colorado River* abstention factors.

## II. Analysis.

### *A. Defendants' Motion to Continue.*

In their Motion to Continue, as supplemented, defendants request that the trial of this action be continued from its present February 2017 setting to "a date on or after September of 2017." (Doc. 102, at 3.) As grounds for this request, defendants assert that allowing the *Bama Bayou* Action to proceed to trial before this case would "prevent[] inefficiency and duplication." (*Id.*) They also indicate that defendants' counsel have a four-week arbitration trial set to begin on February 20, 2017 and that a continuance until a date on or after September 2017 (or, alternatively, after the arbitration concludes) "would assist the Defendants' counsel." (*Id.* at 2.)

Addressing the latter issue first, the parties were placed on notice of this action's February 2017 trial setting back on October 20, 2015, when Magistrate Judge Cassady entered the Rule 16(b) Scheduling Order (doc. 35). There is no indication in defendants' filing that the four-week arbitration setting predates the October 2015 Scheduling Order, or that defendants' counsel were unable, despite diligence, to schedule the arbitration trial at a time not in close proximity to the long-published trial setting in this case.[2] This is not a persuasive ground for granting a continuance.

Nor does the status of the related *Bama Bayou* Action in Mobile County Circuit Court warrant a continuance. This case is ready for trial, or very close to it. Discovery is concluded, plaintiff's motion for partial summary judgment has been ruled on, and the final pretrial conference is mere days away. By contrast, the Court has no information suggesting that trial is imminent in the *Bama Bayou* Action. At best, the court file reflects defendants' representation that "*Bama Bayou* has made significant progress towards trial" and that "the parties in the *Bama Bayou* case have proposed a joint scheduling order that will result in trial either in May or August, 2017." (Doc. 102, at 2.) But those indicators, while encouraging, do not necessarily inspire confidence that the *Bama Bayou* Action – which is rapidly approaching the eighth

[2] To the contrary, plaintiff's counsel represents that the arbitration trial was originally set for December 2016, and was "very recently continued" at the request of the clients of counsel for defendants in this case. (Doc. 118.) Plaintiff's counsel further represents that defendants' counsel notified the arbitrators that the period encompassing February 2017 was available for rescheduling the arbitration trial. These circumstances do not suggest that the conflict cited by defendants either was unavoidable or predated this case's trial setting.

anniversary of its filing in state court – will soon go to trial. On the facts before it, the Court is inclined to agree with plaintiff's assessment that "[g]iven the history of that case, there is no telling whether it will go to trial in 2017." (Doc. 104, at 4.) Under the circumstances, it does not appear to be a wise or efficient use of judicial resources to continue the imminent trial in this case indefinitely pending the outcome of a trial that has not even been scheduled yet in the state-court proceedings.

For all of these reasons, in the exercise of the Court's discretion, defendants' Motion to Continue (doc. 102) is **denied**.

***B. Defendants' Motion to Stay.***

***1. The* Colorado River *Abstention Doctrine.***

At the close of briefing on the Motion to Continue, defendants indicated that they had become "concerned that the appropriate procedural vehicle may have been a renewed motion to stay as opposed to a motion to continue." (Doc. 106, at 3.) So defendants proceeded to file a Renewed Motion to Stay (doc. 107) wherein they once again invoked the abstention principles established in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). A previous iteration of defendants' Motion to Stay pursuant to *Colorado River* abstention was denied via Order (doc. 29) entered on September 25, 2015. Defendants acknowledge the September 2015 Order, but maintain that circumstances are different now. The Court agrees that the procedural posture of this case and the *Bama Bayou* Action have changed in the intervening 15 months, but concludes that those changes do not alter the *Colorado River* calculus in a manner that favors a different result today.

"The *Colorado River* doctrine of 'exceptional circumstances' authorizes a federal district court to dismiss or stay an action when there is an ongoing parallel action in state court." *Moorer v. Demopolis Waterworks and Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004) (citation and internal quotation marks omitted). "The principles of this doctrine rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* (citation omitted). The Eleventh Circuit has cautioned, however, that "*Colorado River* abstention is particularly rare" among abstention doctrines, under which abstention is rarely approved to begin with. *Jackson-Platts v. General Elec. Capital Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013); *see also Ambrosia Coal and Const. Co. v. Pages Morales*, 368 F.3d 1320, 1331 (11th Cir. 2004) ("*Colorado River* abstention is

permissible in fewer circumstances than are the other abstention doctrines, which themselves carve out only slender exceptions to the robust duty to exercise jurisdiction."). This is so because "the pendency of an action in the state court is no bar to proceedings concerning the same matter in federal court," and because "the federal courts have a virtually unflagging obligation to exercise their jurisdiction." *Jackson-Platts*, 727 F.3d at 1140 (citation and internal quotation marks omitted); *see also Moorer*, 374 F.3d at 997 (federal court may utilize *Colorado River* abstention to "defer to a parallel state proceeding under 'limited' and 'exceptional' circumstances") (citation omitted).

***2. The Threshold "Parallel State Action" Requirement.***

The *Colorado River* abstention analysis begins with a threshold inquiry of whether "there is a parallel state action, which is one involving substantially the same parties and substantially the same issues." *Jackson-Platts*, 727 F.3d at 1140 (citation and internal quotation marks omitted). It is far from clear that the "parallel state action" requirement is satisfied. To be sure, this Court opined in the September 2015 Order that this action and the *Bama Bayou* Action were parallel because of the centrality of the "right to payment" question in both cases. (*See* doc. 29, at 4.) But the "right to payment" issue (*i.e.*, the existence of a creditor/debtor relationship and the liability of the Trammells to SEPH for breach of the guaranty agreements) was decided on summary judgment in this case, at least as to Count Three. In the summary judgment order, the undersigned made a specific finding that SEPH was entitled to judgment as a matter of law on the creditor/debtor element of its § 8-9A-5(a) cause of action, pursuant to Rule 56(g), Fed.R.Civ.P.[3] To the extent that the "right to payment" (or, more precisely, the creditor/debtor element of a fraudulent transfer cause of action) has already been decided here, that issue cannot render this case parallel to the *Bama Bayou* Action and does not warrant applying *Colorado River* abstention to stay this case pending the resolution of that question in the state-court

[3] The Court expects that the parties will disagree as to the ramifications of that determination for Counts One and Two. Those causes of action were not directly litigated on summary judgment; however, both are fraudulent transfer claims that have a creditor/debtor element identical to that decided on summary judgment as to Count Three. To allow each side to be heard on this important question, the Court anticipates entering a briefing schedule at the Final Pretrial Conference as to the preclusive effect (if any) of the summary judgment ruling on the creditor/debtor element for Count Three with respect to the corresponding element in Counts One and Two.

lawsuit. Stated differently, in terms of the issues remaining to be decided at trial, the *Bama Bayou* Action may not constitute a "parallel state action" based upon a "right to payment" question.[4] That fact alone weighs heavily against *Colorado River* abstention. *See Reiseck v. Universal Communications of Miami, Inc.*, 141 F. Supp.3d 1295, 1304 (S.D. Fla. 2015) ("[I]f there is any substantial doubt about whether two cases are parallel the court should not abstain.") (citation omitted).

***3. The Multifactor Test.***

Even if one assumes that the *Bama Bayou* Action qualifies as a parallel state action, *Colorado River* abstention remains a rare and exceptional remedy. *See, e.g., Jackson-Platts*, 727 F.3d at 1141 ("Where there are parallel federal and state proceedings, abstention under the *Colorado River* doctrine is still only warranted in exceptional circumstances."). Among the factors to be weighed in determining whether the requisite "exceptional circumstances" exist are the following:

> "(1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties."

---

[4] In their reply brief, defendants expound on another set of issues that they contend renders these two cases parallel. Specifically, defendants cite an "imminent threat of conflicting decisions regarding the existence and amount of interest, attorney fees and collection costs which are heavily relied upon by SEPH in calculating … the Trammells' alleged insolvency at the time of the transfers." (Doc. 117, at 3.) It does not appear, however, that to-the-penny valuations of interest, attorney's fees and collection costs will be necessary to adjudicate this action fully. Counts One and Two do not have an insolvency element at all; therefore, those causes of action can be fully and finally decided without making any factual determinations as to the amount of accrued interest, reasonable attorney's fees and collection costs for which the Trammells are responsible. Even for Count Three, which does present the triable issue of the Trammells' insolvency *vel non* at the time of the subject transfers, the relevant query is not a precise dollar valuation of the Trammells' obligations under the guaranty agreements they executed, but is rather a relative comparison of "the sum of the debtor's debts" and "all of the debtor's assets at a fair valuation." Ala. Code § 8-9A-2(a). Moreover, the weighing of the Trammells' debts and assets may be sidestepped even as to Count Three if SEPH proves at trial that the Trammells were "generally not paying [their] debts as they bec[a]me due." Ala. Code § 8-9A-2(b). In light of all these considerations, the likelihood that both this Court and the state court in the *Bama Bayou* Action will decide exact valuations of the accrued interest, attorney's fees and collection costs may be a theoretical possibility, but is far from a certainty.

*Moorer*, 374 F.3d at 997 (citations omitted). "No single factor is dispositive, and we are required to weigh the factors with a heavy bias favoring the federal courts' obligation to exercise the jurisdiction that Congress has given them." *Jackson-Platts*, 727 F.3d at 1141. That said, "[o]ne factor alone can be the sole motivating reason" for the decision in a particular case. *Moorer*, 374 F.3d at 997. "Finally, we apply these factors flexibly and pragmatically, not mechanically." *Jackson-Platts*, 727 F.3d at 1141.

The parties appear to be in agreement that the first, second, fifth and sixth *Colorado River* factors are largely neutral here, or at least that they do not meaningfully weigh in favor of abstention. Neither this Court nor the Mobile County Circuit Court has assumed jurisdiction over property, as neither action was brought *in rem*. Both fora are equally convenient or inconvenient, given their close geographic proximity. It does not appear that the underlying state-law principles at issue are unduly novel or complex. *See Jackson-Platts*, 727 F.3d at 1143 (fifth *Colorado River* factor "favors abstention only where the applicable state law is particularly complex or best left for state courts to resolve"). And both fora appear adequate to protect the parties' rights. Thus, the critical factors in this case are the third ("the order in which jurisdiction was obtained and the relative progress of the two actions") and fourth ("the desire to avoid piecemeal litigation").

For purposes of the third *Colorado River* factor, the case law is clear that this factor "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 21, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).[5] The *Bama Bayou* Action was filed first (January 2009, as opposed to January 2015), but this federal action has progressed further than the state-court proceedings. Here, the discovery deadline expired months

[5] *See also Jackson-Platts*, 727 F.3d at 1142 ("What matters is not so much the chronological order in which the parties initiated the concurrent proceedings, but the progress of the proceedings and whether the party availing itself of the federal forum should have acted earlier.") (citation and internal quotation marks omitted); *Ambrosia Coal*, 368 F.3d at 1333 (concluding that this factor did not favor abstention where the later-filed federal case had progressed further than the earlier-filed state case); *Pigott v. Sanibel Development, LLC*, 508 F. Supp.2d 1028, 1032 (S.D. Ala. 2007) ("the appropriate inquiry for *Colorado River* abstention purposes is not only which complaint was filed first, but rather how much progress has been made in the two actions") (citations and internal quotation marks omitted).

ago, summary judgment has been briefed and ruled on, and this action is to be tried within 60 days. By contrast, in the *Bama Bayou* Action, no trial date has been set, and it is far from clear that those proceedings will make it to trial in 2017. It makes little sense to freeze a more advanced litigation on the cusp of trial pending the outcome of state-court litigation that is not now ready for trial and may or may not proceed to trial in the foreseeable future. This factor weighs heavily against abstention.[6]

The fourth factor is the desire to avoid piecemeal litigation. To justify the extraordinary remedy of *Colorado River* abstention, "[r]un of the mill piecemeal litigation will not do." *Jackson-Platts*, 727 F.3d at 1142; *see also Ambrosia Coal*, 368 F.3d at 1333 ("as it is properly understood, *Colorado River*'s factor concerning the avoidance of piecemeal litigation does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation ***that is abnormally excessive or deleterious***," meaning piecemeal litigation that goes beyond "some unremarkable repetition of efforts and possibly some piece-by-piece decision-making," but instead "poses … greater waste or danger here than it does in the vast majority [of] federal cases with concurrent state counterparts") (emphasis added).

It may be likely that, as defendants have argued, some repetition of effort and piece-by-piece decision-making will result if this case is not stayed. But the Court perceives nothing abnormally excessive or deleterious about such overlap. As discussed *supra*, given the current procedural posture of the two actions, it is no longer the case (assuming it ever was) that a lengthy list of common legal and factual issues remain for adjudication in both actions. The issue of the presence or absence of a creditor/debtor relationship has been decided on summary

6 In so concluding, the Court finds unpersuasive defendants' assertion that "the Bama Bayou case has made far more progress toward resolving the underlying issues of the existence and amounts of the alleged underlying debts" than this case has accomplished. (Doc. 117, at 5.) Defendants present no argument and cite no evidence to support this proposition. All information before the Court is that the outstanding issues remaining for trial in these fraudulent transfer proceedings have progressed much further than their counterparts in the *Bama Bayou* Action. Nor is defendants' cause strengthened by their contention that "SEPH or its predecessors presumably could have acted earlier instead of waiting until January 2015 to file this action." (Doc. 117, at 6.) To be sure, SEPH (or Vision Bank) could have initiated fraudulent transfer proceedings against the Trammells sooner than it did. But that fact does not favor *Colorado River* abstention because, even with the delay, these proceedings have zoomed past the *Bama Bayou* Action and are now trial-ready.

judgment as to Count Three, and may or may not still be in play as to SEPH's other fraudulent transfer causes of action. Furthermore, there may or may not be duplicative rulings in the two cases on issues concerning interest, attorney's fees and costs of collection owed by the Trammells. While the *Bama Bayou* Action may call for findings as to the exact amounts of indebtedness, here such determinations may not be required and, if they are, the only necessary findings will be the relative magnitudes of the Trammells' assets and liabilities at the time of the subject transfers, not the absolute magnitude of those liabilities. Given these circumstances, the Court does not find that it will be exceptionally deleterious to require defendants to litigate both actions contemporaneously.[7]

In addition to the foregoing discussion, it bears emphasis that the *Bama Bayou* Action is a nearly eight-year old case operating on an uncertain and indefinite timetable. The trial in that action may still be many months away, or longer. That fact is critical in the *Colorado River* analysis. As the Supreme Court has explained, "[w]hen a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the ***parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution*** of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all." *Moses H. Cone*, 460 U.S. at 28 (emphasis added). The Court harbors substantial doubt that the *Bama Bayou* Action will be an adequate vehicle for the complete and prompt resolution of these issues; therefore, *Colorado River* abstention is inappropriate.[8]

---

7 To be clear, *Colorado River* abstention is not triggered any time common issues are raised in ongoing federal and state proceedings. Indeed, the Eleventh Circuit has rejected the notion that abstention is warranted where "inconsistent results or piecemeal litigation would likely result simply because both cases deal with the validity of the Agreement. … If this mistaken approach were in fact the rule, defendants could always escape federal courts simply by filing parallel state lawsuits." *Ambrosia Coal*, 368 F.3d at 1333. Implicit in the concept of "parallel state-court litigation" is the inevitability of some redundancy between the two cases. Yet *Colorado River* abstention is not automatically warranted whenever such parallel actions exist in federal and state courts; to the contrary, the doctrine authorizes abstention in only a small subset of those cases. *See id.* (emphasizing that "in the vast majority [of] federal cases with concurrent state counterparts … federal courts are almost invariably obligated to exercise otherwise valid jurisdiction").

8 Any stay granted under these circumstances would run an unacceptable risk of being immoderate and, hence, unlawful. *See, e.g., Ortega Trujillo v. Conover & Co. Communications, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000) ("A stay must not be 'immoderate.' (Continued)

In sum, there is reason to question whether the *Bama Bayou* Action even qualifies as a parallel state action – a necessary prerequisite for *Colorado River* abstention – anymore. Even if the parallel action requirement were satisfied, abstention is inappropriate here because the federal action has progressed much further than the state-court action, there is no reason to believe that abnormally excessive or deleterious piecemeal litigation will result, and there is substantial doubt that the *Bama Bayou* Action will be an adequate vehicle for the complete and prompt resolution of the issues presented. These concerns are exacerbated when viewed through the prism that *Colorado River* abstention is particularly rare among abstention doctrines, such that a *Colorado River* analysis must be performed "with a heavy bias favoring the federal courts' obligation to exercise the jurisdiction that Congress has given them." *Jackson-Platts*, 727 F.3d at 1141. This is simply not one of those extraordinary cases in which *Colorado River* abstention is appropriate.

**III. Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1. Defendants' Motion to Continue (doc. 102) is **denied**; and
2. Defendants' Renewed Motion to Stay (doc. 107) is **denied**.

DONE and ORDERED this 30th day of December, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

… [A] stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits ….") (citations omitted); *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982) ("stay orders will be reversed when they are found to be immoderate of an indefinite duration") (citation omitted); *Lisa, S.A. v. Mayorga*, 149 Fed.Appx. 901, 903 (11th Cir. Sept. 8, 2005) (finding abuse of discretion in district court's refusal to vacate stay where "the stay order had been in effect for more than two years, and none of the threshold matters in the state action had been finally resolved," such that the stay had "proven to be immoderate").