# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| SE PROPERTY HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 15-0033-WS-C |
| | ) |
| TAMMY T. CENTER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter comes before the Court on Defendants' Motion in Limine to Exclude Plaintiff's Expert Witness, Stacy T. Cummings (doc. 119). The Motion in Limine has been briefed and is now ripe for disposition.[1]

## I. Background.

Plaintiff, SE Property Holdings, LLC ("SEPH"), brought this action seeking to set aside certain transfers of property made by Charles and Belinda Trammell to their children and to family-controlled limited liability companies. SEPH's position is that the Trammells are indebted to it as guarantors on certain defaulted loans, and that when SEPH initiated legal action

---

[1] The Court takes the Motion in Limine under submission without a hearing. The decision of whether to conduct a *Daubert* hearing is discretionary. *See, e.g., Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1252 n.10 (11th Cir. 2007) (in *Daubert* context, "although they are often helpful, hearings are not prerequisite to such determinations under the Federal Rules or established law"); *United States v. Rodriguez*, 591 Fed.Appx. 897, 899 (11th Cir. Jan. 21, 2015) ("it is clear that a district court need not conduct a *Daubert* hearing where one would be unnecessary"); *Madura v. BAC Home Loans Servicing, LP*, 593 Fed.Appx. 834, 847 (11th Cir. Nov. 10, 2014) ("Although *Daubert* hearings 'are often helpful,' they are not a prerequisite to determine the admissibility of expert testimony under the Federal Rules of Evidence or established law.") (citation omitted). Under the particular circumstances presented here, the Court finds that an evidentiary hearing would not be helpful to resolve the Motion. The parties' positions have been adequately presented in their briefs, and it does not appear beneficial, much less necessary, to hear testimony on the issues presented. At any rate, no party has requested a *Daubert* hearing as to witness Cummings.

against them to enforce those guaranty obligations, the Trammells fraudulently transferred significant assets, including a house on Lake Martin, a beach condominium unit, shares of UPS stock, and ownership interests in LLCs. SEPH now brings multiple causes of action under the Alabama Uniform Fraudulent Transfer Act, Ala. Code §§ 8-9a-1 *et seq.* (the "AUFTA"), against the Trammells and others. A critical issue in this case is whether "the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer." Ala. Code § 8-9A-5(a).[2] Indeed, in an Order entered on December 30, 2016, the Court concluded that "[t]he evidence and argument at trial on Count Three will be limited to the questions of whether Charles and Belinda Trammell were insolvent within the meaning of Alabama Code § 8-9A-2 at the time of, or became insolvent as a result of, the challenged transfers." (Doc. 122, at 28.)

A key component of SEPH's contemplated evidence at trial as to the insolvency issue will be the testimony of Stacy T. Cummings. In the Joint Pretrial Document, SEPH explained that "Ms. Cummings will offer an opinion as to the value of the assets and liabilities of Mr. and Mrs. Trammell at the time of the transfers and the value of the assets transferred." (Doc. 129, at 7.) Cummings is a certified public accountant who is certified in financial forensics and as a valuation analyst. (Doc. 128, Exh. A, at Exh. 2.) She has 15 years of experience as a CPA, including work in litigation services and business valuations. (*Id.*) SEPH has proffered Cummings as an expert witness. According to her report, Cummings was retained "to analyze the assets and liabilities of Charles Trammell, his Estate, and Belinda Trammell as of January 26, 2011, December 12, 2011, April 25, 2012 and October 24, 2013 [the dates of the subject transfers] to determine the values of the assets, liabilities, and the amount of estimated assets greater than (less than) liabilities." (Doc. 128, Exh. A at 6.)[3] Based on her review and analysis, Cummings expects to testify that, on each of the specified dates, the liabilities of each of Charles

---

[2] The statute provides that "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." Ala. Code § 8-9A-2(a); *see also Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 668 (N.D. Tex. 2011) ("Under the AUFTA, a debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation.") (citation and internal quotation marks omitted).

[3] Cummings' report indicates that, in performing such analyses, she reviewed extensive materials, including defendants' discovery responses, bank and financial statements, real estate appraisals, statements showing legal fees / costs of collection, loan balances and the like. (Doc. 128, Exh. A at 6 & Exh. 1.)

and Belinda Trammell were greater than the value of his or her assets both before and after the transfer of assets took place; and that the Trammells utilized those transfers to "shift[] ownership of approximately 69% of their total assets to their daughters." (*Id.* at 7.)

Although it appears that SEPH timely and properly disclosed Cummings as an expert witness, defendants did not avail themselves of the opportunity to take her deposition during the discovery phase of this action. Notwithstanding that omission, defendants have now filed a Motion in Limine to exclude Cummings' testimony "because it relies on inaccurate and disputed factual assumptions, unjustified methodology, and offers nothing more than what SEPH's attorneys already have argued and will argue in closing arguments." (Doc. 119, at 1.) SEPH opposes the Motion.

**II.   Analysis.**

    ***A.***    **Daubert *Standard.***

Defendants' Motion in Limine is governed by black-letter *Daubert* principles. The Federal Rules of Evidence, as construed by the Supreme Court in the landmark case of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), "require[] expert scientific evidence to be both reliable and relevant pursuant to Rule 702," such that it "appropriately assists the trier of fact." *United States v. Henderson*, 409 F.3d 1293, 1302 (11th Cir. 2005). In that regard, "[t]he court serves as a gatekeeper, charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250 (11th Cir. 2007). This gatekeeping function is guided by the well-established principle that "[t]he proponent of the expert testimony carries a substantial burden under Rule 702" to show admissibility of that testimony by a preponderance of the evidence. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005); *see also Boca Raton Community Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1232 (11th Cir. 2009) ("The offering party must show that the opinion meets the *Daubert* criteria, including reliable methodology and helpfulness to the factfinder …, by a preponderance of the evidence.").

As a general proposition, "[i]n determining the admissibility of expert testimony under Rule 702, a district court considers whether (1) the expert is qualified to testify competently regarding the matter he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and

(3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *United States v. Douglas*, 489 F.3d 1117, 1124-25 (11th Cir. 2007). "While there is inevitably some overlap among the basic requirements – qualification, reliability, and helpfulness – they remain distinct concepts and the courts must take care not to conflate them." *Rosenfeld v. Oceana Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (citation omitted).

This action is set for a non-jury trial, such that the Court will be acting in the capacity of finder of fact. There is considerable legal support for the proposition that the *Daubert* gatekeeping function is relaxed in the context of a bench trial. *See, e.g., United States v. Brown*, 415 F.3d 1257, 1268-69 (11th Cir. 2005) ("Those barriers are even more relaxed in a bench trial situation, where the judge is serving as factfinder and we are not concerned about dumping a barrage of questionable scientific evidence on a jury. … There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.") (citations and internal quotation marks omitted).[4] That said, it remains true that "[w]hile [the *Daubert*] concerns are of lesser import in a bench trial, where no screening [for] the factfinder can take place, the *Daubert* standards of relevance and reliability for scientific evidence must nevertheless be met." *Scott Bridge Co. v. Gresham Smith and Partners*, 2015 WL 5996206, *4 n.5 (M.D. Ala. Oct. 14, 2015) (quoting *United States v. Brown*, 279 F. Supp.2d 1238, 1243 (S.D. Ala. 2003)).

### B. Defendants' "Helpfulness" Objection.

Defendants first challenge Cummings' expert opinions as failing to satisfy the "helpfulness" requirement, which provides that expert testimony is admissible only if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Rule 702(a), Fed.R.Evid. In evaluating

---

[4] *See also Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."); *Braggs v. Dunn*, --- F.R.D. ----, 2016 WL 6917203, *5 (M.D. Ala. Nov. 25, 2016) ("Ordinarily, [t]he safeguards outlined in *Daubert* are less essential in a bench trial; a judge need not gatekeep for herself.") (citations and internal quotation marks omitted); *One Hour Air Conditioning Franchising, LLC v. Dallas Unique Indoor Comfort, Ltd.*, 2015 WL 5316866, *4 (M.D. Fla. Sept. 11, 2015) ("Importantly, in the case of a bench trial, the court's gatekeeping function is even more constrained. … It is widely accepted that the importance of the pretrial exclusion process contemplated by *Daubert* is lessened in that situation.").

a helpfulness objection, "the court must ensure that the proposed expert testimony is relevant to the task at hand …, *i.e.*, that it logically advances a material aspect of the proposing party's case." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (citations and internal quotation marks omitted); *see also Seamon v. Remington Arms Co.*, 813 F.3d 983, 988 (11th Cir. 2016) (the requirement of "helpfulness, or fit … goes primarily to relevance," and looks to whether the proffered opinion has a "valid scientific connection to the pertinent inquiry") (citations omitted). Additionally, for expert testimony to satisfy the helpfulness prong, that testimony must offer insights "beyond the understanding and experience of the average citizen." *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985); *see also Cook*, 402 F.3d at 1111 ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments.") (citations omitted).

Defendants' helpfulness objection to Cummings' expert opinions is not persuasive. As noted, the issues joined for trial require inquiry into the relative magnitudes of Charles and Belinda Trammells' assets and liabilities at certain specific points in time, so as to assess whether each individual was insolvent at the time of (or as a result of) the challenged asset transfers. Cummings' opinions on that issue arise from technical expertise and calculations derived from her review and analysis of the relevant financial records. Her synthesis of the data, as documented in her expert reports and the numerous tables attached thereto as exhibits, will undoubtedly be helpful to the trier of fact in evaluating each of the Trammells' assets and liabilities for purposes of making a solvency determination as of the pertinent dates when the asset transfers occurred. Accountants have routinely been permitted to testify as experts as to valuation and magnitudes of assets and liabilities where insolvency is at issue.[5] Moreover, the

---

[5] *See, e.g., Constructora Maza, Inc. v. Banco de Ponce*, 616 F.2d 573, 577 (1st Cir. 1980) ("The determination of the 'fair valuation' of the debtor's assets at a specific time is at best an inexact science, and may often be impossible. As a result, insolvency frequently must be determined by proof of other facts or consideration of other factors from which insolvency may be inferred. … Because the value of such assets may, in certain circumstances, be discounted, it is appropriate for the trier of fact to hear qualified opinion testimony on their fairly realizable value."); *Klein v. Tabatchnick*, 610 F.2d 1043, 1048 (2nd Cir. 1979) ("a finding on the issue of insolvency often depends upon the factual inferences and conclusions of expert witnesses"); *Lucas v. Swan*, 67 F.2d 106, 110-11 (4th Cir. 1933) ("on the question of solvency or insolvency, … an expert who has had opportunity to examine the facts may express an opinion on the question, if a proper basis is laid for his testimony"); *Irving Trust Co. v. Jacob Weckstein &* (Continued)

Court has observed firsthand the need for CPA testimony to delineate the Trammells' assets and liabilities at various junctures. On summary judgment, the Court was presented with no such evidence, and the December 30 Order reflects the difficulty in tracking all the potential variables and making the necessary calculations without the benefit of expert guidance.

The linchpin of defendants' helpfulness objection is that Cummings "merely assumes the accuracy of the inaccurate and disputed amounts of interest and collection costs alleged by SEPH, and then proceeds to carry out the same simple mathematical calculations that SEPH's attorneys already have done." (Doc. 119, at 3.) Addressing the latter point first, review of Cummings' reports and the numerous tables attached as exhibits reflects that the witness has utilized specialized expertise and technical knowledge in performing her analysis and reaching her conclusions. Defendants have not taken Cummings' deposition or otherwise developed a record that might support their conclusory argument that she has merely engaged in "simple mathematical calculations."

With respect to defendants' insistence that Cummings' opinions are unhelpful because they rely on speculative or inaccurate assumptions, defendants amplify their point as being that "Ms. Cummings' analysis cannot possibly assist the Court if that analysis is based on factual assumptions … such as ignoring the value of the Trammells' LLC ownership interests in calculating assets and ignoring the impact of the setting aside of the foreclosure sale on the Trammells' liabilities." (Doc. 136, at 2.) This criticism is unfair, because it misstates the contents of Cummings' reports. Indeed, in her Third Supplemental Expert Report dated December 20, 2016, Cummings expressly took into account the value of the Trammells' LLC

---

*Sons*, 64 F.2d 333, 334-35 (2nd Cir. 1933) (trial court properly admitted into evidence accountant's report of corporation's financial condition as evidence of insolvency); *In re Valley-Vulcan Mold Co.*, 5 Fed.Appx. 396, 398-99 (6th Cir. Feb. 26, 2001) (finding no error in admission of expert testimony as to business solvency, where witness's valuations were based on "a well-recognized methodology for determining a business's going-concern values"); *In re Commercial Financial Services, Inc.*, 350 B.R. 520, 529-30 (Bankr. N.D. Okla. 2005) (finding that accountant's "solvency opinions in this case … are likely to assist the Court"); *In re Gulf Northern Transport, Inc.*, 323 B.R. 786, 790 (Bankr. M.D. Fla. 2005) ("whenever possible a determination of insolvency should be based upon expert testimony"); *In re Heilig-Meyers Co.*, 319 B.R. 447, 456 (Bankr. E.D. Va. 2004) ("A balance sheet test of insolvency relies on the testimony of the parties' expert appraisals to conclude with a dollar figure equal to debtors' solvency or insolvency.").

ownership interests, including Charles Trammell's ownership interest in Gulf World, LLC. (*See* doc. 128, Exh. A, at 54, 103.) Moreover, Cummings' Third Supplemental Expert Report makes significant modifications (*i.e.*, revising interest calculations and excluding costs of collection) to take into consideration the state-court order setting aside the foreclosure sales. (*See id.* at 55, 60-61.) As such, defendants' assertion that Cummings' expert opinions are unhelpful because they ignore the valuation of the Trammells' LLC assets and fail to incorporate the effects of the order setting aside the foreclosure sales is factually unsupported.[6]

### C.  *Defendants' "Reliability" Objection.*

As a complement to their helpfulness objection, defendants challenge the admissibility of Cummings' testimony on reliability grounds. The reliability prong of the *Daubert* test "concerns whether the reasoning or methodology underlying the testimony is scientifically valid and … whether that reasoning or methodology properly can be applied to the facts in issue." *Seamon*, 813 F.3d at 988 (citation and internal quotation marks omitted); *see also Allison*, 184 F.3d at 1312 ("the proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable").

---

[6] To be clear, the foregoing discussion should not be construed as meaning that Cummings' expert opinions are beyond reproach as to her underlying assumptions. After all, courts may exclude expert opinions on insolvency that are founded in speculative or inaccurate assumptions. *See, e.g., Galaxy Computer Services, Inc. v. Baker*, 325 B.R. 544, 562 (E.D. Va. 2005) (rejecting expert report on insolvency where witness "failed to incorporate significant assets in reaching a determination as to Galaxy's value" and "utilized unaudited financial statements" as to which he "had no knowledge as to their reliability or correctness"); *Allender v. Southeast Tractor & Equipment Co.*, 178 F. Supp. 413, 418 (M.D. Tenn. 1959) (expert testimony on insolvency issue was excluded where "concerning the value of the bankrupt's assets on June 22, 1956, the opinion of the witness is obviously founded upon hearsay, speculation, and conjecture," such that "[t]he witness is not qualified to express an opinion as to the solvency or insolvency of the bankrupt on June 22, 1956, unless he has some knowledge of, or some factual data indicating, the fair value of the new and used equipment that the bankrupt owned on that date"). But defendants' Motion in Limine fails to identify any assumptions utilized by Cummings that are speculative, inaccurate or otherwise fatal to the helpfulness of her opinions. The Court understands, of course, that defendants disagree with Cummings' interest calculations; however, that objection is best presented via cross-examination, rather than exclusion of the expert opinions altogether. It appears that one of the legal issues the parties are presenting for trial is whether and to what extent the Trammells owe interest on the subject loans, given the state court's recent decision to set aside the foreclosure sales. That determination will be made at an appropriate time; however, its status as a disputed issue does not warrant wholesale exclusion of Cummings' opinions at this time.

Defendants offer a series of arguments to support their contention that Cummings' expert opinions lack the requisite reliability. First, defendants balk that Cummings "relies upon disputed values of interest and collection costs provided by SEPH." (Doc. 119, at 5.) This argument essentially reprises defendants' helpfulness objection. It fares no better repackaged under a "reliability" heading.[7] Second, defendants object that Cummings' "report does not demonstrate the use of any reliable methodology, research, analysis or industry standard of an expert." (*Id.* at 6.) Sure it does. Cummings' expert reports and their accompanying exhibits set forth in considerable detail the materials and data she reviewed, the assumptions she utilized, the calculations she made (with appropriate detailed citations to the underlying source material), and the conclusions she reached. In light of that substantial threshold showing, if defendants contend that her methodology is out of step with accounting principles or is otherwise improper or invalid, it is incumbent on them to explain how. They have not done so, instead resting on conclusory objections that Cummings' methodology is unreliable. Indeed, defendants have not identified so much as a single calculation in Cummings' reports that they label the product of unreliable methodology. Third, defendants offer a non-specific objection that Cummings' report does not reflect that "it is based on sufficient facts and data, and it offers no justification or explanation of methodology used." (Doc. 119, at 6.) On their face, however, Cummings' reports identify the extensive facts and data relied upon and the line-by-line calculations utilized in reaching final determinations of assets and liabilities on the specified dates. There appears to be nothing inherently unreliable or inexplicable about such a methodology.[8]

---

[7] It is well-settled that experts are entitled to rely on reasonable assumptions. *See, e.g., Maiz v. Virani*, 253 F.3d 641, 667 (11th Cir. 2001) ("Barker is certainly qualified to opine on forensic accounting issues, and as part of that process he was entitled to state reasonable assumptions"); *Southeastern Metals Mfg. Co. v. Florida Metal Products, Inc.*, 778 F. Supp.2d 1341, 1344 (M.D. Fla. 2011) ("Experts, however, are entitled to state reasonable assumptions."). Defendants disagree with certain of Cummings' assumptions, at least as they relate to interest owed by the Trammells. Those assumptions may ultimately be deemed correct or incorrect. On the record before it, however, the Court cannot and does not conclude that they are so unreasonable as to strip Cummings' opinions of reliability at the gatekeeping stage.

[8] To the extent that any confusion remains as to what calculations Cummings made, how or why she made them, or where she derived the underlying data used in those calculations, it appears that such confusion is rooted not in any failure of proof on SEPH's part, but on the fact that defendants elected not to take Cummings' deposition and therefore did not avail themselves of the opportunity to ask in-depth questions about her methodology.

### III.  Conclusion.

For all of the foregoing reasons, the Court concludes that defendants' objections to the expert opinions proffered by Stacy Cummings on grounds of helpfulness and reliability are not meritorious. Defendants' Motion in Limine to Exclude Plaintiffs' Expert Witness, Stacy T. Cummings (doc. 119) on *Daubert* grounds is **denied**.

DONE and ORDERED this 19th day of January, 2017.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE