IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SE PROPERTY HOLDINGS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 15-0033-WS-C |
| ) | |
| TAMMY T. CENTER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This matter comes before the Court on Defendants' Motion in Limine to Exclude Plaintiff's Business Records from Edward Jones and Merrill Lynch (doc. 137), Defendants' Motion in Limine to Exclude Certain Expert Witnesses and Reports (doc. 138), and Plaintiff's Omnibus Motion in Limine to Exclude Certain Witnesses from Testifying at Trial (doc. 139). All of these motions have been briefed and are ripe for disposition.

**I.    Defendants' Motion to Exclude Business Records.**

Among the exhibits designated by plaintiff, SE Property Holdings, LLC ("SEPH"), in the Joint Pretrial Document (doc. 129) are certain financial account statements for defendants' accounts held with third-party investment brokers Edward Jones and Merrill Lynch. SEPH obtained these records from Edward Jones and Merrill Lynch directly via subpoenas, rather than from defendants via requests for production of documents. Along with the responsive documents, the third parties furnished SEPH with certain certifications. The certification forms utilized by Edward Jones and Merrill Lynch were apparently their own preprinted forms, as opposed to certification forms provided by plaintiff. SEPH intends to utilize those certificates to lay an evidentiary foundation to support introduction of these Edward Jones and Merrill Lynch account statements into evidence at trial pursuant to the business records exception to the hearsay rule. In their Motion in Limine, defendants identify purported defects in the certification forms that they contend forbid SEPH from being able to utilize the business records exception.

### A.    *The Edward Jones Business Records.*

With regard to the Edward Jones custodian affidavits, defendants point to language stating, "I am the designee of Edward Jones' Custodian of Records." (Doc. 137, Exh. A.) Defendants reason that a "designee" of a custodian of records is not the same as a "custodian of records," which they contend is a significant distinction for admissibility purposes. To qualify for the business record exception to the hearsay rule, a record must be: (i) "made at or near the time [of an act, event, condition, opinion, or diagnosis] by – or from information transmitted by – someone with knowledge;" (ii) "kept in the course of a regularly conducted activity of a business;" and (iii) made as "a regular practice of that activity." Rule 803(6)(A)-(C), Fed.R.Evid. Critically, the Federal Rules of Evidence require that these three conditions be "shown by the testimony of the custodian or other qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification." Rule 803(6)(D), Fed.R.Evid. A Rule 902(11) certification is "a certification of *the custodian or another qualified person* that complies with a federal statute or a rule prescribed by the Supreme Court." Rule 902(11) (emphasis added). Defendants' position is that the language in the Edward Jones certifications identifying the affiant as "the designee of Edward Jones' Custodian of Records" means that the affiant has not been shown to be a "custodian or another qualified person" for purposes of Rule 902(11), and that the Edward Jones certifications therefore do not lay a proper foundation for admissibility of the Edward Jones account statements pursuant to the business record exception.

This objection is not well-taken. The affiant who signed the Edward Jones certifications, Sevmek Fulton, is identified in the certification forms with the title "Edward Jones – Security Processing Department." The certification forms reflect that Fulton is "personally acquainted with the facts herein stated," including that the subject records were kept by Edward Jones in the regular course of business, that it was in the regular course of Edward Jones' business for an employee with knowledge to make the record or transmit information for inclusion in the record, and that the record was made at or near the time of the event. (Doc. 137, Exh. A.)[1] Taken in the

---

[1] Given these averments that Fulton is personally acquainted with these facts relating to the timing, manner and method by which the subject records were created and maintained, defendants' insistence that "the affidavits are devoid of any indication that the (Continued)

aggregate, such facts provide adequate indicia that the affiant is a "qualified person" for purposes of Rule 902(11). *See generally United States v. Collins*, 799 F.3d 554, 584 (6th Cir. 2015) ("the meaning of '[another] qualified witness should be given the broadest interpretation,'" and "[t]he only requirement is that the witness be familiar with the record keeping system") (citations omitted); *United States v. Lauersen*, 348 F.3d 329, 342 (2nd Cir. 2003) (observing that the term "custodian or another qualified person" in Rule 902(11) is "given a very broad interpretation" and that "[t]he witness need only have enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business"). Defendants' Motion in Limine is **denied** as to the Edward Jones account statements.

### B. The Merrill Lynch Business Records.

With regard to the Merrill Lynch custodian affidavits, defendants focus on affiant's statement that "[s]aid records are kept in the regular course and scope of business of Merrill Lynch." (Doc. 137, Exh. B, ¶ 4.) Defendants' objection is that these certifications "fail to state that the records were made in the course of a regularly conducted business activity, or that the regular practice of Merrill Lynch was to have made such a record." (Doc. 137, at 6.) Defendants thus maintain that the Merrill Lynch certifications do not comport with the requirement of Rule 803(6)(B) that they show "the record was kept in the course of a regularly conducted activity of a business," nor the requirement of Rule 803(6)(C) that they show that "making the record was a regular practice of that activity."

Defendants' objection predicated on Rule 803(6)(B) is not persuasive, as the Merrill Lynch certifications' statement that the subject records "are kept in the regular course and scope of business" is sufficiently similar to Rule 803(6)(B)'s requirement that the certification show that the records are "kept in the course of a regularly conducted activity of a business." *Id.* However, the Rule 803(6)(C) objection stands on a different footing. The rule is plain that "[t]o lay a proper foundation for a business record, a custodian or other qualified witness must [certify] that the document was kept in the course of a regularly conducted business activity ***and also that it was the regular practice of that business activity to make the record.***" *United States*

---

declarants are familiar with Edward Jones' procedures regarding the creation and maintenance of the records" (doc. 137, at 4) is inaccurate.

*v. Komasa*, 767 F.3d 151, 156 (2nd Cir. 2014) (citations and internal marks omitted; emphasis added); *see also United States v. Given*, 164 F.3d 389, 394 (7th Cir. 1999) (foundational requirements for business records require showing that "it was the regular practice of that business to make such records"). The rule requires certification that "making the record was a regular practice of" the regularly conducted activity of a business. Rule 803(6)(C), Fed.R.Evid. The Merrill Lynch certifications say nothing about whether the making of the subject records was in the regular course and scope of its business. They are entirely silent on this point.

In its brief, SEPH describes other indicia of reliability that these "standard, run-of-the-mill account statements" have. (Doc. 145, at 6.) SEPH points out that these are defendants' own account statements, and therefore readily accessible to them as account holders if they doubt their veracity. (*Id.*) SEPH also states that defendant Amy Brown's husband is employed by Merrill Lynch and works with the defendant LLCs' accounts, and that defendants' own accountant deems these account statements reliable. (*Id.* at 7.) All of that may well be true. The trouble for SEPH is that Rule 803(6) is not flexible in its foundational requirements. It does not provide alternative means of qualifying for the business exception if the custodian certification has a technical defect.[2] To the contrary, Rule 803(6) delineates a very specific set of requirements for a hearsay exhibit to be admissible as a business record. No matter how one slices it, the Merrill Lynch certifications do not satisfy one of those requirements. They do not aver that making the records was a regular practice of a regularly conducted Merrill Lynch activity. That concept is simply not embodied anywhere in the Merrill Lynch certifications; therefore, they do not pass muster under Rule 803(6)(D).[3] Insofar as SEPH would seek to

---

[2] Although SEPH criticizes defendants for not showing that the records are untrustworthy, defendants' burden to establish lack of trustworthiness is triggered only after plaintiff meets the threshold foundational requirements of Rule 803(6). *See* Fed.R.Evid. 803(6), Advisory Committee Notes to 2014 Amendment ("[I]f the proponent has established the stated requirements of the exception … **then** the burden is on the opponent to show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.") (emphasis added).

[3] *See* Fed.R.Evid. 803(6), Advisory Committee Notes to 1974 Enactment ("[T]he Committee concluded that the additional requirement … ***that it must have been the regular practice of a business to make the record is a necessary further assurance of its trustworthiness***. The Committee accordingly amended the Rule to incorporate these limitations.") (emphasis added).

introduce those account statements as business records pursuant to Rule 803(6), then, it has not laid an adequate foundation.  Defendants' Motion in Limine will be **granted** on this point.[4]

## II.     Plaintiff's Motion to Exclude Witnesses.

SEPH's "Omnibus Motion in Limine" seeks to exclude defense witnesses Martin Sandel, Darrell Melton, Jim Pope, and Thomas Bealle from testifying at trial.  In the Joint Pretrial Document filed on January 6, 2017, defendants listed all four of these individuals among their witnesses.  (Doc. 129, at 8.)

### A.     *Martin Sandel.*

Beginning with Martin Sandel, plaintiff articulates several objections; however, the Court need look no further than plaintiff's assertion that "Sandel was never disclosed by Defendants as someone with knowledge regarding this case or someone they may call at the trial of this case until witness lists were exchanged for trial."  (Doc. 139, at 2.)

In the Rule 16(b) Scheduling Order, Magistrate Judge Cassady directed the parties that "[t]he initial disclosures required by Fed.R.Civ.P. 26(a)(1) shall be exchanged not later than **November 2, 2015**."  (Doc. 35, ¶ 4.)  Among the information encompassed by that directive was disclosure of "the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  Rule 26(a)(1)(A)(i), Fed.R.Civ.P.  The Scheduling Order further provided that "[s]upplementation of disclosures and responses as required by Rule 26(e) is to be accomplished 'at appropriate intervals' and 'seasonably,' but not later than **September 1, 2016**."  (Doc. 35, ¶ 7.)  This supplementation deadline was later extended to "not later than October 14, 2016."  (Doc. 63, at 2.)  Of course, Rule 26(e) requires supplementation of Rule 26(a) disclosures "in a timely manner if the party learns that in some material respect the disclosure … is incomplete … and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Rule 26(e)(1)(A), Fed.R.Civ.P.

---

[4]     That said, the Court does not categorically exclude this evidence.  SEPH will be allowed to introduce such evidence into trial if it finds another means of laying the requisite foundational predicate.

Notwithstanding these requirements, it is undisputed that defendants did not disclose Sandel as someone with knowledge regarding the case or someone they may call at trial until trial witness lists were exchanged.[5]  In response to plaintiff's Motion in Limine, defendants do not suggest that they actually complied with Rule 26(a)(1)(A)(i), Rule 26(e), or the Scheduling Order's initial disclosure and supplementation deadlines with respect to witness Sandel.  Simply put, defendants failed timely to disclose him.  That omission implicates Rule 37(c)(1), which provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence … at a trial, unless the failure was substantially justified or is harmless."  Rule 37(c)(1), Fed.R.Civ.P.  Defendants have made no argument and no showing that their failure to identify Sandel in a timely manner was substantially justified or harmless.  Accordingly, the Court finds that exclusion of the witness is an appropriate sanction pursuant to Rule 37(c)(1).  Plaintiff's Motion in Limine is **granted** as to witness Martin Sandel.

### B.     Darrell Melton.

With respect to defense witness Darrell Melton, SEPH again objects that defendants never disclosed him as someone with knowledge about the case until witness lists were exchanged for trial.  Plaintiff describes its dilemma in plain terms, to-wit: "SEPH has not had the opportunity to do discovery into what relevant knowledge Mr. Melton has, or what relevant knowledge Defendants believe Mr. Melton has."  (Doc. 139, at 2.)  Underscoring the point that plaintiff does not know what this witness will say, SEPH goes on to speculate that perhaps defendants intend to call him to testify as to the creditor/debtor relationship or lack thereof.  Of course, this is precisely why the Federal Rules of Civil Procedure and the applicable Scheduling Order require advance disclosure of the identities of those likely to have discoverable knowledge that parties may use to support their claims or defenses.  In the absence of such timely, appropriate disclosures, the result would be trial by ambush, with litigants preparing for trial

---

[5]  The parties do not specify the precise date on which they exchanged their trial witness lists; however, the Scheduling Order mandates that Rule 26(a)(3) disclosures (which would encompass each party's list of witnesses "the party expects to present and those it may call if the need arises," Rule 26(a)(3)(A)(i)) be made on December 20, 2016.  (Doc. 35, ¶ 8.)  As such, it appears that the parties exchanged their witness lists for trial on or about December 20, 2016.

based on nothing more than guesswork and conjecture about what testimony a late-disclosed witness might give.

In their Response to SEPH's Motion in Limine, defendants do not address the untimely-disclosure argument as to this witness. Defendants make no argument that they complied with Rule 26(a), Rule 26(e) or Scheduling Order deadlines with regard to the disclosure of witness Melton, nor do they identify any circumstances that might either justify the untimely disclosure or render it harmless. The Court finds that exclusion of this witness pursuant to Rule 37(c)(1) is the appropriate sanction for defendants' failure timely to disclose him. Plaintiff's Motion in Limine is **granted** as to witness Darrell Melton.

### C. *Jim Pope.*

SEPH also seeks to exclude the testimony of defense witness Jim Pope, who was an accountant for the Trammells. As with Sandel and Melton, plaintiff's objection is that Pope "was not listed on Defendants' Initial Disclosures or otherwise identified as a potential trial witness until witness lists were exchanged." (Doc. 139, at 3.)

The trouble with SEPH's objection to the timeliness of Pope's nondisclosure is that, by its own admission, plaintiff was made aware during discovery that Pope was the Trammells' primary accountant. That revelation certainly sufficed to place SEPH on notice that Jim Pope was someone with discoverable information relating to the Trammells' assets that defendants might utilize at trial. As such, it was unnecessary for defendants formally to supplement their disclosures to list Pope by name. *See* Rule 26(e)(1)(A), Fed.R.Civ.P. (supplementation of disclosures is required only "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process"). Defendants correctly note that, based on information known to plaintiff, SEPH could have arranged to take Pope's deposition, but elected not to do so. That omission is not tantamount to a violation of defendants' disclosure obligations that might warrant exclusion of Pope's testimony at trial pursuant to Rule 37(c)(1).

Notwithstanding the foregoing, SEPH maintains that the reason it did not take Jim Pope's deposition was that, in the Rule 30(b)(6) deposition of the Trammells' accounting firm, Jackson Thornton & Co., P.C., Richard Powell testified as the 30(b)(6) deponent. Evidently, Pope is also affiliated with the Jackson Thornton firm. During Powell's deposition, defendants' counsel expressly stated, "I will be calling [Powell] to trial. So he will be there." (Doc. 139, Exh. A, at 44.) SEPH now argues, "If it had been disclosed that Mr. Pope, not Mr. Powell, was the

Defendants' potential trial witness, SEPH would have taken his deposition in addition to Mr. Powell's." (Doc. 139, at 3.) This apparent attempt to attribute plaintiff's failure to take Pope's deposition to misleading statements by defense counsel cannot succeed. As an initial matter, defendants' counsel never represented that Pope would not testify, only that Powell would testify. Moreover, that Jackson Thornton designated Powell as its Rule 30(b)(6) representative in no way suggests that defendants did not plan to call Pope to testify on his own behalf as to his accounting work for the Trammells. It is entirely proper for one witness employed by an entity to testify as the entity's 30(b)(6) representative about information known or reasonably available to the entity, and for another witness employed by the same entity to testify as to information within his or her personal knowledge. Finally, plaintiff's suggestion that defendants are now calling "Mr. Pope, not Mr. Powell, [as] the Defendants' potential trial witness" is inaccurate. The first two names on defendants' witness list in the Joint Pretrial Document are Richard Powell and Jim Pope. In short, there is no indication and no information before the Court that would support an inference that defendants' counsel lulled or misled plaintiff into thinking that Jim Pope (whom plaintiff knew to be the Trammells' primary accountant) would not be called as a witness at trial. His disclosure was timely.

For all of these reasons, Plaintiff's Motion in Limine is **denied** as to witness Jim Pope.

### D.     *Thomas Bealle.*

Finally, plaintiff's Motion in Limine seeks to exclude the testimony of Thomas Bealle. According to the Motion, Bealle is a real estate appraiser whom defendants retained in the related *Bama Bayou* litigation in state court "to perform an appraisal of the Bama Bayou and Marine Park property as of March 2009." (Doc. 139, ¶ 11.) Defendants listed Bealle in their Rule 26(a) initial disclosures in this case as an "individual likely to have discoverable information." However, that disclosure was not sufficient because defendants intend to call Bealle at trial to testify as an expert witness. By the clear terms of Judge Cassady's Order dated June 16, 2016, defendants' expert disclosures and expert reports were due by no later than August 15, 2016. (*See* doc. 63, at 2 ("The expert reports as required by Rule 26(a)(2)(B) shall be produced … by defendant[s] on or before **August 15, 2016**.").) The June 16 Order further fixed a discovery cutoff of September 16, 2016, and specified that "[a]ll discovery is to be completed" by that date, with "completed" meaning that all "experts' reports have been exchanged" and "all depositions, including experts' depositions, have been taken." (*Id.* at 1-2.) Notwithstanding

these deadlines, by their own admission defendants failed to disclose Bealle as an expert witness until December 22, 2016.  (Doc. 147, at 2.)  Plaintiff indicates that, as of January 17, 2017 when the Motion in Limine was filed, "Defendants still have not produced a report summarizing the opinions Mr. Bealle would offer at trial."  (Doc. 139, at 3.)  Plaintiff states that it simply "does not know" what defendants' intentions are or what opinions they will elicit from Bealle at trial.  On that ground, SEPH requests that Bealle be excluded as a witness pursuant to Rule 37(c)(1).

In response, defendants explain their delays in disclosing Bealle as an expert witness and in producing his expert report by reference to developments in the *Bama Bayou* litigation in state court.  According to defendants,

> "The state court order setting aside the foreclosure sale of the Bama Bayou and Marine Park properties altered the assets owned by Gulf World, LLC, which necessarily affected the value of Gulf World, LLC and Mr. Trammell's ownership interest therein.  Plaintiff's expert witness, Stacy Cummings, will rely on appraisals of the Bama Bayou and Marine Park properties to provide her opinion on the value of Mr. Trammell's ownership interest in Gulf World, LLC.  ***Thomas Bealle should be allowed to provide his professional opinion regarding the value of the Bama Bayou and Marine Park properties to rebut her testimony.***"

(Doc. 147, at 2 (emphasis added).)

This argument overcomes SEPH's untimely-disclosure objection.[6]  Here is why: Plaintiff's expert Stacy Cummings authored a Third Supplemental Report dated December 20, 2016.  (Doc. 128-1, at 53-106.)  In that December 20 report, Cummings for the first time offered opinions as the valuation of the interest of Charles Trammell (or his Estate) in Gulf World, LLC, taking into account valuations of the parcels of real property as to which the foreclosure sales were set aside in the *Bama Bayou* Action in October 2016.  (*See id.* at 54-55.)  In support of those opinions, Cummings submitted as Exhibit 16 a table reflecting her calculations as to the

---

[6]   This is so, despite defendants' candid (and correct) observation that "[t]he parties could have anticipated that the foreclosure sale [might] be set aside." (Doc. 138, at 5.)  The *Bama Bayou* ruling was not a totally unexpected bolt from the blue.  The parties could and should have made contingency arrangements in this case to safeguard them from that eventuality.  Their failure to do so, and their inexplicable delay of two months *after* the *Bama Bayou* ruling before initiating efforts to bolster their valuation opinions and rebut each other's valuations, is directly responsible for the eleventh-hour crossfire of motion practice concerning mutual expert disclosure problems arising from both sides' failure to comply with court deadlines.  Be that as it may, the Court is placed in the position of having to fashion an equitable, just, and efficient solution to ameliorate the suboptimal situation that the parties have created.

assets and liabilities of Gulf World, LLC on particular dates. (*See id.* at 103.) More specifically, Cummings' Exhibit 16 lists valuations of "West," "North," "East," and "Marine Park" parcels on each of January 26, 2011, December 12, 2011, April 25, 2012, and October 24, 2013. Those valuations are based on appraisal reports identified in footnotes to Exhibit 16. (*Id.*) Defendants now state they want to call Bealle (a real estate appraiser) to rebut Cummings' opinions relating the value of those assets listed in Exhibit 16. For that limited purpose, defendants' disclosure of Bealle as an expert witness was not untimely. Again, SEPH first notified defendants of these new opinions from Cummings (including Exhibit 16) via a copy of her report dated December 20, 2016. Defendants designated Bealle as a rebuttal expert just two days later. Under these unique circumstances, plaintiff's objection that defendants' disclosure of Bealle as an expert witness is untimely is **overruled**.[7] Thomas Bealle will be allowed to testify for the defense as a rebuttal expert. There are two caveats, however. First, Bealle may only testify in a rebuttal capacity to the specific opinions identified herein. Second, in order to avoid unnecessary delay and unfair surprise during the trial, defendants are **ordered** to furnish plaintiff with a written summary of the rebuttal opinions that Bealle expresses, as well as the basis and reasons for them and the facts or data he considered in forming them, no later than the close of business on **April 14, 2017**. If defendants do not timely comply with the latter requirement, then Bealle will be excluded.

For all of the foregoing reasons, plaintiff's Motion in Limine is **denied** as to witness Thomas Bealle.

---

[7] In its Motion in Limine, SEPH also argues that Bealle's testimony should be excluded because if he intends to "testify as to the value of the property as of March 2009, then that date is too remote from the time of the transfers at issue to be useful." (Doc. 139, at 4.) This objection is likewise overruled because (i) plaintiff is speculating as to the time period covered by Bealle's appraisals; and (ii) any argument that Bealle's appraisal valuations are too remote in time from the transfers goes to the testimony's weight not its admissibility, although plaintiff is free to explore the topic with Bealle on cross-examination. SEPH also objects that Bealle's opinions "would not prove the value of Mr. Trammell's interest in Gulf World, LLC." (Doc. 139, at 4.) That is not the point. Through Cummings, plaintiff intends to offer expert testimony as to the value of Charles Trammell's interest in Gulf World, LLC. Bealle's testimony would be aimed at rebutting certain assumptions, figures and/or calculations used by Cummings in forming that opinion. As such, Bealle's opinions would be relevant and admissible. This relevance objection is overruled.

**III.     Defendants' Motion to Exclude Expert Witnesses and Reports.**

In their final Motion in Limine (doc. 138), defendants seek exclusion of plaintiff's witnesses Daniel Green, Claud Clark, III, Jennifer McDade, Scott McDade, and Mike Rogers. These witnesses are real estate appraisers.[8] Defendants explain that SEPH first disclosed Green, Clark, J. McDade and S. McDade by including their names on a list of witnesses produced on December 21, 2016.  (*See* doc. 138, Exh. A.)  Rogers was apparently disclosed sometime later, although SEPH listed him in the Joint Pretrial Document dated January 6, 2017 as follows: "Mike Rogers (as rebuttal if Thomas Beale [*sic*] is permitted to testify)."  (Doc. 129, at 7.) Witnesses Green, Clark, J. McDade and S. McDade all prepared written real estate appraisals on which Cummings relied in preparing her Third Supplemental Report on December 20, 2016 addressing the value of Charles Trammell's interest in Gulf World, LLC.[9]  Plaintiff produced the appraisals of Green, Clark, J. McDade and S. McDade to defendants shortly before Cummings' Third Supplemental Report was issued.   Defendants' Motion in Limine alleges that SEPH disclosed all of these real estate appraisers and their written appraisals too late, and that such witnesses and exhibits should therefore be excluded.

By all appearances, Defendants' "Motion *in Limine* to Exclude Certain Expert Witnesses and Reports Proffered by Plaintiff" is now moot.  After all, one week after filing that Motion, defendants' counsel reported to the Court as follows:  "Thomas Bealle stands in the same position as … Daniel Green, Claud Clark, III, Jennifer McDade, Scott McDade, and Mike Rogers. … ***Consequently, these individuals should all receive the same treatment – they should either all be excluded from testifying, or all allowed to testify.***"  (Doc. 147, at 1-2 (emphasis added).)  Plaintiff expressed a similar sentiment in a filing the very same day.[10]  The parties have

---

[8]     In the Joint Pretrial Document, SEPH stated that these individuals "are all real estate appraisers and would, if necessary, offer opinions as to the value of real property."  (Doc. 129, at 7.)

[9]     Rogers, by contrast, does not appear to have prepared any reports in this case.  His role, according to SEPH, will be confined to providing rebuttal expert testimony to the opinions of defense expert Thomas Bealle.  Defendants not having furnished plaintiff with a written summary of Bealle's opinions to date, it would of course be difficult for Rogers to have prepared a written summary of what opinions he intends to offer in rebuttal of Bealle's opinions.

[10]     In particular, plaintiff's counsel wrote, "If Bealle is permitted to testify, there is no basis to exclude the Bama Bayou appraisers and their reports." (Doc. 144, at 4.)  Plaintiff's (Continued)

clearly articulated their agreement, then, that if Bealle is permitted to testify, then plaintiff's appraisers should likewise be permitted to testify. In this Order, *supra*, the Court has ruled that Bealle may testify at trial, subject to certain conditions. As such, and as acknowledged by both sides in their written submissions, witnesses Green, Clark, J. McDade, S. McDade and Rogers may also testify. Defendants' Motion in Limine (doc. 139) is, therefore, **moot**.

Even if Defendants' Motion in Limine were not moot, the Court would deny the exclusionary relief requested therein. Defendants object that plaintiff disregarded the relevant expert disclosure deadlines by tarrying so long before disclosing its appraiser experts. It is certainly true that SEPH's disclosures occurred well after the deadlines prescribed in the Scheduling Order. But it is equally true that SEPH's decision to name these individuals as trial witnesses was a direct reaction to defendants' designation of Thomas Bealle as an expert witness. (*See* doc. 144, at 3 ("Plaintiff does not presently intend to call the Bama Bayou appraisers at trial unless Thomas Bealle is permitted to testify ….").) As noted *supra*, defendants did not designate Bealle as an expert until December 22, 2016, which was several months after the applicable deadlines. Simply put, defendants cannot rely on noncompliance with court-ordered disclosure deadlines to bar plaintiff from calling witnesses whose trial testimony it requires in order to address the opinions of a defense witness who was designated in a manner that failed to comply with those very same disclosure deadlines. The Court will not enforce deadlines against plaintiff that defendants likewise failed to observe.

Also included in Defendants' Motion in Limine is an objection to the admissibility of the written appraisals of plaintiff's expert witnesses. Defendants' sole objection is framed in terms of timeliness; indeed, defendants state, "The appraisals, which are expert reports, were not disclosed on or by August 1, 2016, as required by this Court's Scheduling Order." (Doc. 138, at 4.) It appears that this aspect of the Motion in Limine is **moot** for the same reasons that it is moot as to defendants' request to exclude those witnesses altogether. Even if it were not moot, defendants' objection to the timeliness of disclosure of these expert reports would be **overruled**. Again, the timing of plaintiff's disclosure of these reports was in large part driven by defendants'

---

counsel further opined, "[I]f Bealle is permitted to testify, then Defendants have given no reason to exclude Rogers from offering his own opinions about Bealle's appraisal." (Doc. 144, at 5.)

tardy disclosure of Bealle, which in turn was at least partially driven by plaintiff's tardy disclosure of Cummings' third supplemental report. Neither side has clean hands as to the relevant expert disclosure deadlines. Rather than exclude all of this evidence and leaving a gaping hole in both sides' evidentiary presentations at trial, the Court finds that the fair, just solution is to allow both sides to present such evidence and to overrule both sides' objections to the timeliness of each other's expert witness and report disclosures.

In the alternative, defendants posit that "this Court should reopen discovery and extend the discovery deadline for the limited purpose of allowing Defendants to depose" Green, Clark, J. McDade, S. McDade and Rogers. (Doc. 138, at 5.) This request is **denied**. Trial is set for next month. To reopen discovery now to allow defendants to take five expert depositions would inevitably necessitate continuance of the trial setting. Moreover, as discussed herein, both sides are to blame for the last-minute designation of expert witnesses previously known to them. Having chosen this path, the parties must face the consequences, meaning trial without full discovery of the dueling experts' opinions via deposition. Besides, defendants could have moved for reopener of discovery on an emergency basis in December 2016 immediately upon disclosure of plaintiff's witnesses, which would have allowed sufficient time to take those depositions without disrupting the trial setting. They chose not to do so. The final point as to the discovery reopener request is this: It appears uncontested that the opinions of Green, Clark, J. McDade and S. McDade are summarized in written real estate appraisals that were furnished to defendants sometime prior to December 20, 2016. (Doc. 144, at 2 ("These real estate appraisals were done by Daniel Green, Claud Clark, III, and Jennifer and Scott McDade …. They were produced to Defendants before the final supplement to Ms. Cummings' Report.").) Defendants thus have documents providing them with ample notice of the opinions that these witnesses expect to offer and the grounds upon which they rely. Defendants have not shown that such information is inadequate to enable them to prepare for trial and cross-examine these witnesses effectively. Of course, these witnesses' trial testimony will be limited to the subject matter of their expert reports, such that they will not be allowed to testify to matters beyond the scope of those written appraisals.

Finally, the Court recognizes that plaintiff's rebuttal expert, Mike Rogers, has not prepared a written report. As discussed in footnote 9, Rogers' ability to fashion such a report has been impaired by the fact that Thomas Bealle (the defense witness whose opinions he will

address via rebuttal testimony) has also not prepared a written report. Nonetheless, in the interests of fairness and avoiding delay, defendants are entitled to know Rogers' anticipated expert opinions before trial. Defendants have previously been directed to furnish plaintiff with a written summary of Thomas Bealle's opinions, as well as the basis and reasons for them and the facts or data considered, no later than **April 14, 2017**. By the same token, plaintiff must furnish defendants with a written summary of Mike Rogers' rebuttal opinions, as well as the basis and reasons for them and the facts or data he considered in forming them, no later than the close of business on **April 21, 2017**. If plaintiff does not timely comply with the latter requirement, then Rogers will be excluded.

**IV.    Conclusion.**

For all of the foregoing reasons, it is **ORDERED** as follows:

1. Defendants' Motion in Limine to Exclude Plaintiff's Business Records from Edward Jones and Merrill Lynch (doc. 137) is **granted in part**, and **denied in part**. The Motion is **denied** as to the Edward Jones business records. The Motion is **granted** as to the Merrill Lynch business records, which will be excluded from trial unless plaintiff develops additional means of satisfying the foundational requirements of Rule 803(6);

2. Plaintiff's Omnibus Motion in Limine to Exclude Certain Witnesses from Testifying at Trial (doc. 139) is **granted in part,** and **denied in part**. The Motion is **granted** as to defense witnesses Martin Sandel and Darrell Melton. In all other respects, the Motion is **denied**;

3. Defendants' Motion in Limine to Exclude Certain Expert Witnesses and Reports (doc. 138) is **moot**, and to the extent not moot, **denied**;

4. Defendants are **ordered** to furnish plaintiff with a written summary of the rebuttal opinions that Thomas Bealle expresses, as well as the basis and reasons for them and the facts or data he considered in forming them, no later than the close of business on **April 14, 2017**; and

5. Plaintiff is **ordered** to furnish defendants with a written summary of the rebuttal opinions that Mike Rogers expresses, as well as the basis and reasons for them

-14-

and the facts or data he considered in forming them, no later than the close of business on **April 21, 2017.**

DONE and ORDERED this 7th day of April, 2017.

                                        s/ WILLIAM H. STEELE
                                        UNITED STATES DISTRICT JUDGE