# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| SE PROPERTY HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 15-0033-WS-C |
| | ) |
| TAMMY T. CENTER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on defendants' Motion to Clarify and Modify (doc. 189). The Motion has been briefed and is now ripe.[1]

Plaintiff, SE Property Holdings, LLC ("SEPH"), brought this fraudulent transfer action against a host of defendants, including Tammy Center, Belinda Trammell, Amy Brown, Trammell Family Orange Beach Properties, LLC ("Trammell Orange Beach"), and Trammell Family Lake Martin Properties, LLC ("Trammell Lake Martin"). Following a non-jury trial, the undersigned entered an extensive Order (doc. 180) on August 8, 2017. Among other things, the August 8 Order concluded that SEPH had proven by a preponderance of the evidence that defendants had engaged in actual fraudulent transfer, in violation of Alabama Code § 8-9A-4(a); constructive fraudulent transfer, in violation of Alabama Code § 8-9A-4(c); and constructive

---

[1] Defendants have requested oral argument on the Motion to Clarify and Modify, but do not explain why they believe it would be helpful. All parties have been granted a full and fair opportunity to be heard in writing on the Motion, and have availed themselves of that opportunity without restriction or limitation. (*See* docs. 189-1, 191, 196.) Moreover, the undersigned is quite familiar with this matter, as evidenced by nearly three years of litigation, a three-day non-jury trial, and a 64-page written Order (doc. 180) setting forth the Court's findings of fact and conclusions of law pursuant to Rule 52(a)(1), Fed.R.Civ.P. Under the circumstances and given the lack of any specific showing by defendants as to the likely benefits, the Court finds that oral argument would not be helpful and therefore **denies** defendants' request for same. *See* Civil L.R. 7(h) ("In its discretion, the Court may rule on any motion without oral argument. Oral argument requests must contain specific reasons why oral argument would be helpful.").

fraudulent transfer, in violation of Alabama Code § 8-9A-5(a). In so doing, the Court "made specific findings of very serious, fraudulent conduct by defendants attempting to place assets beyond SEPH's reach." (Doc. 180, at 62.)

On the question of remedy, the August 8 Order observed that "the final remedies ordered in this case must take into account the seriousness of defendants' misconduct, must safeguard the bank's interests in full should it prevail in *Bama Bayou*, and must ensure that defendants do not profit from their fraudulent conduct by pocketing any appreciated value in the fraudulently transferred assets in the interim." (Doc. 180, at 62-63.) The August 8 Order also looked to the text of the Alabama Uniform Fraudulent Transfer Act ("AUFTA"), whose plain language confers considerable discretion upon the trial court to fashion appropriate remedies in a particular case, including specifically "[a]n injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property; or … [a]ny other relief the circumstances may require." Ala. Code § 8-9A-7(a).

After careful consideration of the parties' briefs and arguments on the issue of remedies, and with due regard for the severity of defendants' misconduct in intentionally fraudulently transferring assets away from their creditor's grasp in violation of Alabama law, the Court determined that an injunction as contemplated by § 8-9A-7(a) was warranted in this case. On that basis, the August 8 Order provided as follows:

> "The Court readily concludes that the equitable remedy of an injunction is highly appropriate in this case. It is therefore **ordered** that defendants are **enjoined** from further disposition of any of the following assets: the Perdido Place Condo, the Lake House, a 45% membership interest held by each of [Tammy] Center and [Amy] Brown in each of Trammell Family Orange Beach Properties, LLC and Trammell Family Lake Martin Properties, LLC, the shares of UPS stock transferred into those LLCs in April 2012, and the shares of UPS stock transferred to Belinda Trammell in October 2013. This injunction will remain in effect until such time as a final judgment has been entered in the *Bama Bayou* Action, and ***is intended to preserve the status quo dating back to when the fraudulent transfers occurred, in terms of available assets to satisfy any judgment that may be entered in SEPH's favor*** against Belinda Trammell and/or the Estate of Charles Trammell in the state-court proceedings."

(Doc. 180, at 58 (emphasis added).) The August 8 Order also indicated that the Court is actively considering the award of additional remedies in this case as a means of ensuring that SEPH's interests are adequately protected from defendants' misconduct. On that basis, the August 8 Order directed an accounting of the fraudulently transferred assets, with follow-up briefing by

the parties to address additional remedies under the AUFTA that may be appropriate in these circumstances. At present, the Court is still awaiting the results of that accounting and supplemental briefing, all of which remain ongoing.

More than two months after the injunction was imposed, defendants filed their Motion to Clarify and Modify, directed at the injunction portion of the August 8 Order and predicated on what defendants characterize as an "urgent" need "to raise cash to cover fixed costs associated with the real property and stock portfolios of" the LLC defendants. (Doc. 189, at 1.) Although the Motion purports to set forth dire financial prospects facing the LLCs, it remains silent as to the individual defendants' financial condition and ability to service these debts that they have created and/or for whose benefit the debts have been incurred. There are a number of different components to this Motion, each of which the Court will address in turn.

Defendants criticize the August 8 injunction as "overbroad and excessive in scope," and violative of principles set forth by the Eleventh Circuit in *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520 (11th Cir. 1994). (Doc. 189-1, at 6.) For those reasons, defendants suggest that the injunction should be curtailed, if not vacated altogether. The Court cannot agree. Again, the August 8 Order made specific, detailed findings that Charles and Belinda Trammell had systematically transferred assets (including the Lake Martin house, the Orange Beach condo and the UPS stock) to the LLC defendants, and had transferred their ownership interests in the LLC defendants to their daughters (Center and Brown), all with the actual intent to injure, delay and defraud the Trammells' creditor, SEPH, to whom they were indebted to the tune of millions of dollars pursuant to certain guaranties. In light of those findings, the August 8 injunction was entirely appropriate to preserve what remains of those fraudulently transferred assets for SEPH's benefit pending the outcome of the *Bama Bayou* litigation. And defendants' reliance on *Rosen* is misplaced. In *Rosen*, the Eleventh Circuit held "that the district court lacked the general equitable authority in this case to freeze Moses' assets pending trial where the shareholder appellees sought only the award of monetary damages – and not equitable relief – for fraud under federal securities laws and state common law." *Rosen*, 21 F.3d at 1529. By contrast, the August 8 injunction was not rooted in some nebulous "general equitable authority" of the Court; to the contrary, it was specifically and directly authorized by the terms of the Alabama Uniform Fraudulent Transfer Act. *See* Ala. Code § 8-9A-7(a)(3)(a) ("In an action for relief against a transfer under this chapter, the remedies available to creditors … include … [a]n injunction

against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property."). Defendants identify no authority reasonably supporting the proposition that, upon finding that a debtor intentionally fraudulently transferred property to evade creditors, a court applying the AUFTA is not empowered to enter an injunction preventing the further disposition of those assets. This aspect of the Motion is **denied**.

Next, defendants request clarification of the injunction as to whether it reaches cash dividends generated by the UPS stock held by the LLC defendants. Defendants state their desire to use those cash dividends (approximately $1,125.00 per month for Trammell Family Lake Martin and $1,126.00 per month for Trammell Family Orange Beach) to pay fixed costs (utility bills, association dues, property taxes, insurance, termite bonds) for the properties held by the LLCs. That aspect of the Motion is **granted**, with the caveat that those cash dividends may only be used to cover fixed costs relating directly to the preservation and maintenance of the real property itself, and not to any debts incurred for the benefit of the individual defendants. Thus, the Court specifically excludes from the permissible use of cash dividends payment of debt service on margin loans and attorney's fees, all of which appear to have been incurred for the primary benefit of Center and Brown rather than to preserve the Orange Beach condominium unit and the Lake Martin house from dissipation or waste. Insofar as clarification of the August 8 Order on this point may be beneficial, and pursuant to the AUFTA and the specific findings of intentionally fraudulent conduct by defendants as described in that Order, it is **ordered** that defendants are **enjoined** from expenditure of cash dividends generated by the remaining UPS stock shares transferred into the defendant LLCs in April 2012, except that such dividends may be used to pay fixed costs directly relating to the preservation and maintenance of the real property (*i.e.*, utility bills, association dues, property taxes, insurance, termite bonds).

Defendants also seek elaboration of the August 8 Order's injunction as it relates to the margin loan debt service. In this regard, defendants indicate that (i) both LLCs have margin loans with Merrill Lynch in current principal sums exceeding $225,000, that must be serviced; (ii) the LLCs have the option to have Merrill Lynch add the debt service amounts to the loan amounts secured by the UPS stock; (iii) if the debt service amount is secured by the UPS stock, then in the event of a default Merrill Lynch will liquidate more shares of stock to satisfy the debt; and (iv) in light of the foregoing, defendants query whether this kind of arrangement would constitute a "disposition" within the meaning of the August 8 Order. The Court answers this

question in the affirmative.  The August 8 Order unambiguously specifies that the objective of the injunction is "to preserve the *status quo* … in terms of available assets to satisfy any judgment that may be entered in SEPH's favor" in the *Bama Bayou* Action.  (Doc. 180, at 58.) Allowing defendants to encumber those assets further in the manner proposed in the Motion to Clarify and Modify with respect to Merrill Lynch margin loans taken for the benefit of individual defendants would run directly contrary to that stated objective.

Finally, defendants suggest that the August 8 Order's injunction should be relaxed or vacated to enable defendants to sell the Lake Martin house and/or additional UPS stock to obtain funds that may be used to pay certain debts that Brown and Center have previously accumulated or may accumulate for their own benefit, such as attorney's fees and margin loans.  That request is **denied** as incompatible with both (i) the August 8 Order's findings of intentional fraudulent conduct by defendants; and (ii) the stated purposes of the injunction, which are to protect SEPH's interests to the greatest possible extent from further drawdown of the assets that the Trammells intentionally fraudulently transferred into the defendant LLCs in an attempt to keep the bank from being able to reach them in satisfaction of the Trammells' debts on the underlying guaranties.

For all of the foregoing reasons, defendants' Motion to Clarify and Modify (doc. 189) is **granted in part**, and **denied in part**, as set forth herein.

DONE and ORDERED this 13th day of November, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE