# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| SE PROPERTY HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 15-0033-WS-C |
| | ) |
| TAMMY T. CENTER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on plaintiff's Accounting and Motion for Additional Discovery (doc. 198). The issues presented in that filing have been briefed (docs. 199, 202, 203) and are now ripe for disposition.

**I.  Background.**

Following a non-jury trial, the Court entered an Order (doc. 180) on August 8, 2017 pursuant to Rule 52(a)(1), Fed.R.Civ.P., setting forth findings of fact and conclusions of law. Among other things, the August 8 Order found that plaintiff, SE Property Holdings, LLC, had shown by a preponderance of the evidence that all defendants (Belinda R. Trammell, Amy T. Brown, Trammell Family Orange Beach Properties, LLC, Trammell Family Lake Martin Properties, LLC, and Tammy T. Center, both individually and in her capacity as Personal Representative of the Estate of Charles H. Trammell) were liable on Counts I, II and III for violations of the Alabama Uniform Fraudulent Transfer Act, Ala. Code §§ 8-9A-1 *et seq.*[1] As a

---

[1]  In a recent brief, defendants inaccurately suggest that the August 8 Order exonerated defendants Center and Brown by concluding that they neither engaged in fraudulent transfers nor conspired to do so. (*See* doc. 199.) The August 8 Order directly addressed and debunked the "incorrect premise that AUFTA liability can be visited only on 'debtors' and 'transferors.'" (Doc. 180, at 22.) Upon examination of the statutory language and applicable case law, the Court concluded that "SEPH may be entitled to monetary and equitable remedies against the transferees if the Court finds the transfers to have been fraudulent under applicable law. Accordingly, the transferees are properly joined in this action and named as defendants in the AUFTA claims." (*Id.* at 24.) Moreover, the remedies imposed by the August 8 Order for the
(Continued)

remedy for these AUFTA violations, the August 8 Order enjoined defendants from further disposition of the fraudulently transferred assets, to-wit: the Perdido Beach Condo, the Lake House, the 45% interest held by each of Center and Brown in each of the two defendant LLCs, the UPS stock shares transferred to those LLCs in April 2012, and the UPS stock shares transferred to Belinda Trammell in October 2013. By its terms, this injunction "will remain in effect until such time as a final judgment has been entered in the *Bama Bayou* Action, and is ***intended to preserve the status quo dating back to when the fraudulent transfers occurred, in terms of available assets to satisfy any judgment that may be entered in SEPH's favor against Belinda Trammell and/or the Estate of Charles Trammell in the state-court proceedings***." (Doc. 180, at 58 (emphasis added and footnote omitted).)

The August 8 Order did not specifically impose other remedies or award other relief. Nonetheless, the Court expressed concern that "the remedy of an injunction may be insufficient to protect SEPH's interests fully," given the evidence at trial that "transferee defendants have already wasted or otherwise dissipated many tens of thousands of dollars worth of the fraudulently transferred UPS stock shares." (*Id.* at 62.) Given the transferee defendants' apparent dissipation of a significant chunk of the fraudulently transferred assets, the August 8 Order recognized the probable existence of a large gap (or deficiency) between the valuation of the fraudulently transferred assets in total, and the valuation of the remaining assets today. The August 8 Order also noted the dearth of record evidence as to "precisely how much has been spent" and "whether those funds have been used to purchase any other assets that might be subject to execution if SEPH prevails in the *Bama Bayou* Action." (*Id.*) The Order emphasized that "the final remedies ordered in this case must take into account the seriousness of defendants' misconduct, must safeguard the bank's interests in full should it prevail in *Bama Bayou*, and must ensure that defendants do not profit from their fraudulent conduct by pocketing any appreciated value in the fraudulently transferred assets in the interim." (*Id.* at 62-63.) With that objective in mind, the August 8 Order concluded as follows:

> "As a starting point, the Court **orders** that an accounting be performed to quantify exactly how much the transferee defendants have dissipated or wasted the

---

transfers found to be fraudulent expressly reached all defendants, including Center and Brown as transferees.

fraudulently transferred assets (and particularly the UPS stock shares), where those dissipated assets went, what the shortfall is between the fair value of those assets at the time of the fraudulent transfer and their valuation today as a result of such dissipation / waste, and whether defendant transferees have other property whose disposition might be enjoined to cover the deficiency and protect SEPH's interests in the event it prevails in the *Bama Bayou* Action."

(*Id.* at 63.)

Over the next three months, SEPH's accountant, Stacy Cummings, analyzed extensive financial documentation and information supplied by defendants for the purpose of ascertaining the disposition of the fraudulently transferred UPS stock and the present whereabouts of any proceeds. Based on Cummings' accounting, SEPH requests the following additional relief: (i) that the August 8 Order's injunction be expanded to cover the real property at 9513 Gunnison Drive and 333 Oak Ridge Drive; and (ii) that additional discovery (including depositions of the transferee defendants) be authorized to facilitate a comprehensive determination of where the UPS stock value has gone. Defendants oppose all such requests for additional relief.

## II. Analysis.

From the outset, it is critical to focus on the purpose of this exercise. The August 8 Order found all defendants liable on SEPH's fraudulent transfer causes of action. It found that the transferor defendants had fraudulently transferred tens of thousands of shares of UPS stock, the Perdido Beach Condo, the Lake House, and a 90% interest in the two family-owned LLCs to the transferee defendants. To preserve the *status quo* and to protect SEPH to the greatest extent possible pending a final judgment as to the transferor defendants' liability in the underlying *Bama Bayou* Action, the August 8 Order imposed an injunction on further transfer or disposition of those assets.[2]

---

[2] The *Bama Bayou* Action has been pending in state court for almost nine years, and constitutes SEPH's attempt to collect on certain unpaid loans and guaranties, including specifically the multiple guaranties executed by Charles and Belinda Trammell. If the Trammells' fraudulently transferred assets were entirely dissipated prior to entry of final judgment in the *Bama Bayou* Action, then any victory by SEPH in that case would prove hollow because, in the wake of the Trammells' fraudulent transfers and the transferee defendants' dissipation of such assets, there would no longer be any assets available for SEPH to satisfy said judgment. This objective was clearly spelled out in the August 8 Order, and is expressly authorized by the AUFTA. *See* Ala. Code § 8-9A-7(a)(3) (including among the remedies available to creditors for a fraudulent transfer, "[a]n injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property"). Other jurisdictions
(Continued)

Nonetheless, the remedy of enjoining further transfer of the UPS shares in particular struck the Court as potentially inadequate to achieve the stated objective of preserving the *status quo*.³ For example, suppose the transferee defendants had previously cashed out of the UPS stock and spent the proceeds. In that circumstance, the August 8 Order's injunction remedy would have all the efficacy of padlocking the ranch after the cattle had already been rustled. The Court had no intention of awarding such an illusory remedy to SEPH. Fortunately, the AUFTA provides for flexible, open-ended remedies to enable a court to fashion a just, equitable outcome in a particular case. Indeed, the statute specifies that "[s]ubject to applicable principles of equity and in accordance with the applicable rules of civil procedure," a court finding that fraudulent

---

adopting the Uniform Fraudulent Transfer Act have authorized similar relief for the same reason. *See, e.g., SRB Inv. Services, LLLP v. Branch Banking and Trust Co.*, 709 S.E.2d 267, 272 (Ga. 2011) ("When a money judgment is likely to be uncollectible because a debtor has fraudulently moved its assets in an attempt to dissipate or conceal them from a creditor, Georgia law, both before and under the Georgia UFTA, gives the creditor the right to seek interlocutory relief by freezing the assets where they are."); *GEA Group AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 417 (7th Cir. 2014) ("If a postjudgment suit to *recover* assets that had earlier been fraudulently conveyed might prove futile – if the assets might by then have been concealed, or been dissipated, or have otherwise been placed beyond the reach of the judgment creditor – the potential judgment creditor faces a probabilistic harm that may entitle him to injunctive relief."). Thus, the August 8 Order was not definitively opining as to what the result on the merits of the *Bama Bayou* Action should be, but was simply designed to prevent the transferor defendants from utilizing their unlawful conduct in fraudulently transferring certain assets as a means of dodging any liability they may be found to have in *Bama Bayou*.

³ We know that the transferee defendants still hold their interests in the subject LLCs, which continue to own the Perdido Beach Condo and Lake House. Thus, the fraudulently transferred assets of central importance to this dissipation/waste concern are the UPS stock shares. To that end, it bears emphasis that if the transferee defendants had retained the fraudulently transferred UPS stock they received in 2012 and 2013, its aggregate value today would approach $4 million. To recap, in April 2012, transferor defendants fraudulently transferred 25,102 shares of UPS stock to transferee defendants. At a share price of $78.325, the shares transferred in April 2012 were fairly valued at $1,966,114.15 at the time of the transfer. Likewise, in October 2013, transferor defendants fraudulently transferred an additional 8,798 shares of UPS stock to transferee defendants. At a share price of $94.79, those shares were fairly valued at $833,962.42 at the time of the transfer. Using the UPS share price of $114.36 in effect as of August 31, 2017 (an arbitrary, fixed date applied by SEPH's accountant to illustrate the point), those fraudulently transferred UPS shares would now be worth $3,876,804 (or 33,900 shares x $114.36/share).

transfers have occurred may award "[a]ny other relief the circumstances may require." Ala. Code § 8-9A-7(a)(3)(c). Moreover, the AUFTA authorizes courts to extend an injunction to cover not only the fraudulently transferred asset itself, but also any other property. *See* Ala. Code § 8-9A-7(a)(3)(a) (providing for entry of "[a]n injunction against further disposition by the debtor or a transferee, or both, of the asset transferred ***or of other property***") (emphasis added).

In light of these concerns, the August 8 Order required an accounting to be performed. The results of that accounting, as reported by SEPH and not materially contradicted by defendants, reflect that the UPS shares fraudulently transferred by Charles Trammell to the transferee defendants in 2012 and 2013 have been depleted to a large extent. Of the 12,551 shares fraudulently transferred to Trammell Lake Martin, only 4,032 remain today. Of the 12,551 shares fraudulently transferred to Trammell Orange Beach, only 4,026 remain today. Of the 8,798 shares fraudulently transferred to Belinda Trammell, zero remain today. Simply stated, the transferee defendants have dissipated $2,955,291.12 (25,842 shares x $114.36/share) in fraudulently transferred assets from 2012 and 2013 that would otherwise have been available to SEPH to collect on any judgment received against Charles and Belinda Trammell in the *Bama Bayou* Action. The precise allocation of those extraordinary expenditures is not entirely clear; however, defendants' accounting calculations, which are largely uncontradicted by defendants, show that (i) Belinda Trammell made gifts to the Brown family exceeding $147,000, and to the Center family exceeding $227,000; (ii) Trammell Orange Beach assets of more than $888,000 were paid directly to or for the benefit of the Center family; and (iii) Trammell Lake Martin assets of more than $883,000 were paid directly to or for the benefit of the Brown family. (Doc. 198, Exh. A.) These amounts exclude payments of legal and accounting fees, account fees, property taxes, interest expense, and so on.[4]

---

[4] Defendants' financial picture, and the decimation of millions of dollars in value of fraudulently transferred UPS stock shares in a short period of time, is even worse than it looks. The remaining 4,032 shares of UPS stock held by Trammell Lake Martin (valued at $461,099.52 as of August 31, 2017) are subject to a lien of $227,819.83 pursuant to loans taken by and/or for the personal benefit of Amy Brown and Tammy Center using the stock as collateral. Likewise, the remaining 4,026 shares of UPS stock held by Trammell Orange Beach (valued at $460,413.36 as of August 31, 2017) are subject to a lien of $227,595.46 pursuant to loans taken by and/or for the personal benefit of Brown and Center using the stock as collateral. SEPH argues that "Brown and Center should be required to personally satisfy these loans." (Doc. 198, at 3 n.3.) However, that question has not been squarely presented here, particularly when the (Continued)

The obvious and material question is where that approximately $2 million in UPS stock proceeds (gifted to or for the benefit of the Center or Brown families) went. In connection with the accounting performed in this case, Brenda Trammell, Center and Brown all completed interrogatories detailing their present assets and liabilities as of November 2017.[5] Belinda Trammell's assets consist of a personal residence located at 9513 Gunnison Drive, Pike Road, Alabama, valued at $295,000 (with a mortgage whose current principal balance is $150,000); a Merrill Lynch IRA valued at $356,000; checking accounts with $74,000 in total balances; and personal property, jewelry, vehicles and furnishings valued at $11,000. (Doc. 198, Exh. B at 1-3.) Center's assets consist of joint ownership of the Gunnison Drive home, a joint checking account owned with Brown that has a balance of $7,000, and personal property and bank balances totaling approximately $16,000. (*Id.* at 4-6.) Brown's assets include joint ownership of the Gunnison Drive home, joint ownership with her husband of a home at 333 Oak Ridge Drive, Pike Road, Alabama valued at $330,900 (with a mortgage whose principal balance is approximately $200,000), the $7,000 joint checking account with Center, and personal property and bank balances totaling approximately $13,000. (*Id.* at 7-9.)[6]

Thus, SEPH's accounting establishes that the transferee defendants have dissipated roughly $2 million in value from UPS stock shares fraudulently transferred to them by Charles Trammell in 2012 and 2013, with almost nothing to show for it in terms of assets on which

---

creditor on those loans has not been joined as a party herein or been given an opportunity to be heard. At any rate, the remaining shares of UPS stock owned by the two LLCs are covered by the injunction entered in the August 8 Order. The point is that in less than five years, the transferee defendants have squandered or encumbered the great majority of the tens of thousands of UPS shares fraudulently transferred to them by Charles Trammell.

[5] Of course, Center and Brown each own 47.5% interests in each of Trammell Lake Martin and Trammell Orange Beach, of which a 45% interest in each is already subject to and covered by the injunction set forth in the August 8 Order. Belinda Trammell's 5% interest in the LLCs, and the remaining 2.5% interest of each of Brown and Center in the subject LLCs, are outside the scope of the subject injunction.

[6] The uncontroverted information before the Court is that these interrogatory responses are comprehensive and accurate. As defendants' counsel put it, "Amy Brown, Tammy Center and Belinda Trammell have the assets they have. They do not have any assets other than those shown on their interrogatory responses." (Doc. 119, ¶ 17.)

SEPH may execute. Again, the intent of the injunctive relief prescribed in the August 8 Order was to preserve the *status quo* to the greatest extent possible, to prevent defendants from profiting from the very serious fraudulent conduct documented therein, and to safeguard SEPH's interests in having assets available to collect on any judgment it might receive against the Trammells in the *Bama Bayou* Action. Those objectives have been frustrated by the revelation that the transferee defendants have somehow frittered away more than three-quarters of the UPS shares that were fraudulently transferred to them in 2012 and 2013. Under the circumstances, the Court readily agrees with SEPH that expansion of the remedies ordered in the August 8 Order is warranted and appropriate in the interests of justice and under applicable principles of equity. Accordingly, the injunction set forth in the August 8 Order is hereby **expanded** to cover the real property identified in the transferee defendants' interrogatory responses. To that end, defendants are **enjoined** from further disposition of their interests in the real property located at 9513 Gunnison Drive and 333 Oak Ridge Drive, until such time as a final judgment has been entered in the *Bama Bayou* Action.[7]

---

[7] The AUFTA expressly authorizes this remedy. *See* Ala. Code § 8-9A-7(3)(a) ("Subject to applicable principles of equity … [a]n injunction against further disposition by the debtor or a transferee, or both, of the asset transferred ***or of other property***") (emphasis added), § 8-9A-7(3)(c) ("[a]ny other relief the circumstances may require"). In opposing this remedy, defendants argue as to both residences that "[t]here is no evidence that this asset was acquired with any fraudulently transferred funds." (Doc. 199, at 5-6.) However, nothing in the AUFTA limits injunctions to fraudulently transferred assets or assets purchased with the proceeds of fraudulently transferred assets. As for defendants' insistence that "[t]here is no legal basis for an extension of the injunction" to cover such properties, the Court disagrees and finds ample statutory authority for such relief in § 8-9A-7(a)(3). The 333 Oak Ridge Drive property and the 9513 Gunnison Drive property are just the sort of "other property" for which injunctive relief is authorized by the AUFTA. Besides, the equitable basis of extending the injunction to cover these assets is readily apparent. The uncontroverted evidence is that, in less than five years, these defendants squandered approximately $2 million in ill-gotten assets that Charles Trammell fraudulently transferred to keep them out of SEPH's reach. The result of such profligate (or worse) expenditure of fraudulently-obtained assets is that SEPH's ability to collect on any judgment it may receive against the Trammells has been greatly and unjustly impaired. Extending the injunction to reach the 333 Oak Ridge Drive and 9513 Gunnison Drive properties owned by the transferee defendants will afford SEPH the potential of additional assets on which to execute should it prevail in the *Bama Bayou* Action. Contrary to defendants' objections, such a remedy is neither inequitable nor unauthorized by law.

As part of its accounting submission, SEPH moves for an enlargement of discovery into the ultimate disposition of the proceeds of the UPS stock. In support of that request, SEPH hypothesizes that those proceeds were "fraudulently transferred to other family members" and that "instead of preserving the fraudulently transferred assets …, they 'doubled down' by moving assets out of the names of the transferees." (Doc. 198, at 6; doc. 202, at 10.) For that reason, "SEPH requests permission to take a deposition of Brown, Center, and Belinda Trammell" to investigate "potential subsequent fraudulent transfers." (Doc. 198, at 6; doc. 202, at 10.) The Motion for Additional Discovery (doc. 198) is **denied**. SEPH has had the benefit of several months for its accountant to wade through the transferee defendants' financial records to determine what became of the fraudulently transferred assets. The Court is not inclined to allow the subject of remedies to blossom into a separate, full-blown litigation any more than it already has. More to the point, suppose SEPH is correct that the transferee defendants fraudulently transferred the proceeds of the UPS stock to other family members. Those family members are not parties to this litigation and have not had an opportunity to be heard or to defend their interests; therefore, it is does not appear that they would or could be bound by any injunction this Court might enter. Furthermore, the Court would have to examine each of those transfers to determine whether they bear the badges of fraud or otherwise fall within the parameters of the AUFTA, which is tantamount to an entirely separate liability proceeding. In short, SEPH's request for further discovery would take this matter too far afield from the specific claims and parties joined in this dispute, would require additional parties to be joined and additional liability findings to be made, and would prolong and proliferate these proceedings (which went to trial in May 2017) exponentially.

**III.    Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1. The injunction entered in the Order dated August 8, 2017 is **expanded** to include the transferee defendants' interests in that certain real property located at 9513 Gunnison Drive, Pike Road, Alabama, and 333 Oak Ridge Drive, Pike Road, Alabama;

2. Defendants are **enjoined** from further disposition of their interests in the above-described property until such time as a final judgment has been entered in the *Bama Bayou* Action;

3. SEPH's Motion for Additional Discovery (doc. 198) is **denied**; and

4. This Order resolving all remaining issues joined in this dispute, a final judgment will enter.

DONE and ORDERED this 2nd day of January, 2018.

                                              s/ WILLIAM H. STEELE
                                              UNITED STATES DISTRICT JUDGE