IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SE PROPERTY HOLDINGS, LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION 15-0033-WS-C |
| | ) |
| TAMMY T. CENTER, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

    This matter comes before the Court on the Show Cause Order (doc. 236) entered by this Court on April 13, 2020, and on plaintiff's Motion for Sanctions (doc. 241) against defendant Amy Brown and non-party Patrick Lance Brown for continuing violations of the injunction entered by this Court.

**I.    Background.**

    This is a fraudulent transfer action brought by SE Property Holdings, LLC ("SEPH"), against an array of defendants, including the Estate of Charles H. Trammell, Trammell's wife and daughters, and a pair of Trammell family-owned LLCs. One of those defendants is Amy Brown, a daughter of Charles H. Trammell. Ms. Brown was among the recipients of assets fraudulently transferred by Mr. Trammell for the purpose of keeping said assets beyond the reach of SEPH as it sought to collect on certain contractual obligations owed to it by Mr. Trammell in connection with a failed real estate development project. Following a non-jury trial, this Court entered a Final Judgment (doc. 206) on January 2, 2018, ordering, adjudging and decreeing "that all defendants are liable to plaintiff on Counts I, II, and III for violations of the Alabama Uniform Fraudulent Transfer Act." (Doc. 206, PageID.7299.) As part and parcel of that Final Judgment, defendants were expressly "**enjoined** from further disposition of … the shares of UPS stock transferred into" the two LLC defendants, specifically Trammell Family Orange Beach Properties, LLC and Trammell Family Lake Martin Properties, LLC (the "Injunction"). (*Id.*)

    On its face, the Final Judgment reflected that it was being entered "[i]n accordance with the Orders entered on August 8, 2017 (doc. 180), November 13, 2017 (doc. 197) and this date (doc. 205)." (*Id.*) The August 8, 2017 Order set forth the terms and scope of the Injunction, and

explicitly stated that the Injunction's purpose was "to preserve the *status quo* dating back to when the fraudulent transfers occurred, in terms of available assets to satisfy any judgment that may be entered in SEPH's favor against Belinda Trammell and/or the Estate of Charles Trammell in the state-court proceedings." (Doc. 180, PageID.3893, 3899.)  Furthermore, at defendants' explicit request,[1] the November 13, 2017 Order elaborated on the meaning of the word "disposition" by clarifying that using the UPS stock as collateral for loans or debt service payments would constitute a disposition in violation of the Injunction. (Doc. 197, PageID.6956-57.)[2]  Indeed, the November 13 Order reinforced the fundamental principle that the objective of the Injunction was to preserve the *status quo* in terms of available assets to satisfy any state-court judgment in SEPH's favor, and opined that "[a]llowing defendants to encumber those assets further [as collateral for debt service obligations] … would run directly contrary to that stated objective." (*Id.*)  SEPH did in fact receive a state-court judgment in its favor in the underlying action.  On that basis, the Court entered an Amended Judgment on April 23, 2020 that, among

---

[1]    Plaintiff's Exhibit 11 to the Show Cause Hearing is a highlighted copy of the Motion to Clarify and Modify, as well as the accompanying memorandum of law, filed by defendants in this action on October 11, 2017 and found at docket entry 189.  Page 4 of that memorandum includes the following statements by defendants' then-attorney: "The two LLCs have the option to have Merrill Lynch simply add the debt service amount to the loan amount secured by the UPS stock …. This has the effect, however, of an increase in the amount of the debt which is secured by the stocks. …. The Defendants seek clarification whether an increase in the amount of the debt secured by the stock amounts to 'a disposition.'"  Thus, defendants (including Ms. Brown) brought this precise issue to the fore in October 2017.

[2]    The fact that <u>defendants</u> sought this clarification of the Injunction is of critical importance because it demonstrates that, contrary to the Browns' oft-asserted position in these contempt proceedings, they were sufficiently concerned whether the existing debt service arrangements violated the Injunction that they instructed then-counsel to request elaboration from the Court.  As the November 13 Order explained, "In this regard, defendants indicate that (i) both LLCs have margin loans with Merrill Lynch in current principal sums exceeding $225,000, that must be serviced; (ii) the LLCs have the option to have Merrill Lynch add the debt service amounts to the loan amounts secured by the UPS stock; (iii) if the debt service amount is secured by the UPS stock, then in the event of a default Merrill Lynch will liquidate more shares of stock to satisfy the debt; and (iv) in light of the foregoing, defendants query whether this kind of arrangement would constitute a 'disposition' within the meaning of the August 8 Order.  The Court answers this question in the affirmative." (Doc. 197, PageID.6596-97.)  This sequence of events shows that as far back as November 2017, defendants (including Ms. Brown) were fully aware that using Merrill Lynch line of credit accounts secured by UPS stock to pay debt service was a direct violation of the Injunction.  Yet Ms. Brown, with the assistance, oversight and participation of Mr. Brown, continued doing so for years to come, and indeed has done so as recently as September 2020.

other things, imposed a money judgment against Amy Brown in the amount of $1,548,509.20, representing the value of the fraudulently transferred assets that she received at the time of transfer, pursuant to Ala. Code § 8-9A-8(c).  (Doc. 238, PageID.7474; *see also* doc. 237, PageID.7470-72.)  The Amended Judgment reiterated the terms of the Injunction previously specified in the original Judgment dated January 2, 2018.

## II.     The Motion for Order to Show Cause.

On January 16, 2020, SEPH filed a Motion for Order to Show Cause (doc. 222), alleging that Ms. Brown and her husband, Patrick Lance Brown, were systematically, continuously violating the terms of the Injunction by drawing on a line of credit that was secured by the subject UPS stock as collateral.  Specifically, SEPH's evidence reflected that (i) defendant Trammell Family Lake Martin Properties, LLC, has established a Loan Management Account ("LMA") at Merrill Lynch; (ii) the LMA is secured by fraudulently transferred shares of UPS stock that are directly covered by the Injunction; (iii) Ms. Brown, who is Manager and part owner of Trammell Family Lake Martin Properties, LLC, has been consistently withdrawing funds from the LMA for personal use for several years; and (iv) Ms. Brown is paying no debt service on the LMA, but instead borrows from the line of credit to pay the account's monthly interest charges, thereby further encumbering the UPS stock each month.  SEPH also argued that Mr. Brown was in violation of the Injunction because he is a Senior Financial Advisor at Merrill Lynch and the Account Advisor for Trammell Family Lake Martin Properties, LLC, and has therefore overseen and allowed Ms. Brown to dissipate assets covered by the Injunction in the manner described above.  Although Mr. Brown is not a party to this litigation, SEPH's position is that he is nonetheless bound by the Injunction pursuant to Rule 65(d)(2)(B)-(C), Fed.R.Civ.P., inasmuch as he is an officer/agent/servant of defendants and a person in active concert or participation with defendants.

A briefing schedule was entered to afford the Browns (who were then represented by counsel) a full and fair opportunity to be heard on SEPH's Motion for Order to Show Cause. Following the close of briefing, the Court entered an Order (doc. 236) on April 13, 2020, granting the Motion and setting the matter for Show Cause Hearing.  In so doing, the Court made a specific finding that SEPH had met its initial burden of proving, by clear and convincing evidence, Ms. Brown's noncompliance with the Injunction.  The April 13 Order found that "SEPH has shown by clear and convincing evidence that the underlying injunction was lawful; that it was clear, definite and unambiguous; that [Ms.] Brown had the ability to comply; and that

she failed to do so, and indeed failed even to ask anyone if her LMA withdrawals were permissible under the terms of the injunction." (Doc. 236, PageID.7464.) With respect to Mr. Brown, the April 13 Order found that "SEPH has come forward with extensive circumstantial evidence – none of which the Browns have rebutted – raising a strong inference that Mr. Brown had actual notice of the injunction." (*Id.*) On that basis, the Court notified the parties that, during the Show Cause Hearing, "Mr. Brown may testify and the parties may otherwise present evidence and argument as to the question of actual notice and any other factual or legal issues pertinent to the question of civil contempt." (*Id.*)

In light of the foregoing, the April 13 Order set the matter for Show Cause Hearing to allow Ms. Brown and Mr. Brown an opportunity to present evidence and argument showing why they should not be held in civil contempt. In so doing, the Court explained that SEPH had met its *prima facie* burden of showing a violation, and that under binding precedent, "[o]nce this *prima facie* showing of a violation is made, the burden then shifts to the alleged contemnor to produce evidence explaining his noncompliance at a 'show cause' hearing." *F.T.C. v. Leshin*, 618 F.3d 1221, 1232 (11th Cir. 2010) (internal citations and marks omitted). Thus, the clearly defined purposes of the Show Cause Hearing were (i) to afford Ms. Brown an opportunity to meet her burden of explaining her noncompliance with the Injunction; (ii) with respect to Mr. Brown, to allow the parties to put on evidence and argument on the issue of actual notice and, if actual notice were found to exist, to afford Mr. Brown an opportunity to explain his noncompliance with the Injunction; and (iii) if the Browns failed to offer satisfactory explanations for their noncompliance with the Injunction, to consider evidence and argument as to appropriate sanctions for civil contempt against the Browns.

## III.   The Show Cause Hearing.

After multiple continuances at the Browns' behest, a Show Cause Hearing was held before the undersigned on August 20, 2020, with the Browns and counsel for plaintiff, SE Property Holdings, LLC ("SEPH"), appearing. All interested persons and entities received a full and fair opportunity to be heard and to present whatever evidence and argument they deemed appropriate.³ Based on the evidence and argument presented at the Show Cause Hearing, the

---

³ The Browns appeared at the Show Cause Hearing *pro se*. In the months preceding that hearing, the Browns had retained and dismissed at least three sets of attorneys in this matter. In an Order dated July 28, 2020 allowing their last retained attorney (Asheton W. Sawyer) to withdraw based on his representations of a total breakdown in their working
(Continued)

-4-

Court finds that both Ms. Brown and Mr. Brown are in civil contempt of court for their ongoing pattern of knowing violations of the Injunction with respect to the LMA at Merrill Lynch in the name of Trammell Family Lake Martin Properties, LLC.  Necessarily embedded in that conclusion are underlying determinations that Ms. Brown failed to meet her burden of explaining her noncompliance with the Injunction; that Mr. Brown had actual notice of the Injunction and is therefore bound by it pursuant to Rule 65(d)(2)(B)-(C), Fed.R.Civ.P., as defendants' officer/agent/servant and as a person in active concert or participation with them, and particularly Ms. Brown and Trammell Family Lake Martin Properties, LLC; and that Mr. Brown failed to meet his burden of explaining his noncompliance with the Injunction.

For clarity, the Court will briefly unpack and explain each of those subordinate determinations underlying its contempt finding.  First, Ms. Brown offered no persuasive explanation for her noncompliance with the Injunction.  She testified to her understanding that the Injunction had been lifted; however, she could not identify any factual basis that might have rationally caused her to develop such a misguided belief.  Besides, for the vast majority of the time period in which she has been violating the Injunction by further encumbering the UPS shares via withdrawals and debt service accumulation in the LMA, Ms. Brown has had the benefit of retained counsel who have directly litigated issues concerning the scope of the Injunction on her behalf.  Ms. Brown could and should have sought out legal advice if she did not understand the parameters of the Injunction.  But she apparently chose not to do so.  Ms. Brown also professed ignorance as to how the interest was being paid on the large and growing LMA loan balance.  Again, she knew about the Injunction.  She had counsel at her disposal.  And her husband was the Merrill Lynch Account Advisor for the LMA.  It is no excuse for Ms.

---

relationship, the Court specifically indicated, "The Browns are strongly encouraged to retain counsel to represent them in connection with the serious allegations they are presently facing and the potential imposition of sanctions against them if they are found to have violated this Court's injunction."  (Doc. 249, PageID.7514.)  The July 28 Order went on to caution the Browns that "the August 20 hearing will not be continued to facilitate or accommodate any efforts to hire a new lawyer," and that if they did not retain new counsel in the three-week period leading up to the August 20 hearing, "then they must appear *pro se* at the Show Cause Hearing and will be expected to be fully prepared to represent themselves and to defend against SEPH's allegations."  (*Id.*, PageID.7514-15.)  The Browns neither retained new counsel nor requested any accommodations or clarifications from the Court in light of their unrepresented status.  The July 28 Order was mailed by the Clerk of Court to the Browns at their address of record.  The Court has no information and no reason to believe that they did not receive it; indeed, all indications are to the contrary, given that the Browns personally appeared at the hearing.

Brown to say she "didn't know" or "didn't understand" when the facts about the restrictions under which she was required to operate were readily available to her. Her apparent strategy of closing her eyes and pretending the Injunction did not exist does not excuse Ms. Brown's protracted period of noncompliance, extending even to the present day as she continues to encumber the UPS shares further by rolling new LMA debt service obligations into the overall loan balance.[4]

Second, the Court readily concludes that Mr. Brown had actual knowledge of the Injunction, such that he is bound by it as both defendants' agent (Account Adviser for Trammell Family Lake Martin Properties, LLC and, indirectly, Ms. Brown) and a person in active concert or participation with them (Ms. Brown's personal withdrawals from the LMA that he managed/supervised at Merrill Lynch benefited him directly and substantially because she borrowed many thousands of dollars to pay children's tuition and other household bills, thus giving him financial incentive to allow such withdrawals even though he knew they violated the Injunction). During the Show Cause Hearing, Mr. Brown acknowledged that he had long been aware of the existence of the Injunction and that it imposed restrictions on the fraudulently transferred UPS stock shares that were collateral for the LMA. His testimony that he was unaware whether the Injunction proscribed borrowing against that UPS stock was not credible. After all, Mr. Brown testified that he was defendants' single point of contact with their counsel, that he was in regular contact with defendants' counsel about this litigation, that he regularly received court orders and other legal documents pertaining to this litigation as the family's primary (and indeed singular) liaison with their retained counsel. These and other facts elicited at the Show Cause Hearing amount to clear and convincing evidence that Mr. Brown knew about the Injunction, that he knew borrowing against the subject UPS stock was a violation of the Injunction, and that he was complicit in (and, indeed, facilitated) Ms. Brown's large cash

---

[4] *See Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 646 F.2d 800, 808 (2nd Cir. 1981) ("a party to an action is not permitted to maintain a studied ignorance of the terms of a decree in order to postpone compliance and preclude a finding of contempt"); *see also Chaganti & Associates, P.C. v. Nowotny*, 470 F.3d 1215, 1224 n.2 (8th Cir. 2006) (same); *Landmark Legal Foundation v. E.P.A.*, 272 F. Supp.2d 70, 82 (D.D.C. 2003) ("A party may not deliberately maintain ignorance of an order, but has a duty to stay informed, especially if it knows an injunction is pending."); *General Motors Corp. v. Gibson Chemical & Oil Corp.*, 627 F. Supp. 678, 681-82 (E.D.N.Y. 1986) ("the knowledge required of a party in contempt is knowledge of the existence of the order, … not knowledge of the particulars of that order") (citations omitted).

withdrawals from the LMA and her use of a standing instruction to pay monthly interest charges on the account simply by borrowing additional funds against the UPS stock.

Third, Mr. Brown made no showing at the Show Cause Hearing to explain his noncompliance with the Injunction. Instead, Mr. Brown repeatedly stated that he had no idea he was expected to speak or present evidence at the Show Cause Hearing, that he was only present in court that day to support his wife, and that he has not done anything wrong. None of this testimony is credible.[5] Based on the circumstantial evidence presented at the hearing, the Court finds that Mr. Brown knowingly facilitated, participated and benefited from Ms. Brown's repeated, consistent, ongoing violations of the Injunction. Given Mr. Brown's direct, extensive involvement in this litigation on behalf of all defendants as their point of contact with counsel, he must have known about the Injunction and its particulars as they relate to disposition of UPS stock.[6] He was plainly aware that SEPH was seeking to hold him in contempt, and that these contempt proceedings and the Show Cause Hearing had every bit as much to do with him as they did with Ms. Brown. And Mr. Brown's insistence that he was an unsophisticated non-participant who did not know anything about anything is frankly irreconcilable with his status as a successful Senior Financial Advisor at Merrill Lynch. In short, Mr. Brown's attempt to explain away his violations of the Injunction is wholly lacking in credibility.

## IV.    Sanctions.

Having found that the Browns are both in civil contempt and that SEPH's Motion for Sanctions is properly granted for their recurring and innumerable violations of the Injunction spanning a period of nearly three years, all that remains is the question of what sanctions are

---

[5] Among numerous other problems with his testimony, Mr. Brown would apparently have this Court believe that he never reviewed any of the Orders relating to the Show Cause Hearing, including Orders sent directly to his home. Deliberately ignoring court orders that he actually received is not an excuse for failing to comply with them. Moreover, it bears emphasis that the Browns had counsel for many months during the pendency of these contempt proceedings. It defies logic and reason that Mr. Brown might have been unaware that he personally was in the crosshairs of the SEPH's contempt motion, or that he was directly being accused of knowingly violating the Injunction.

[6] For example, as the family's point of contact with their lawyers in this litigation, Mr. Brown must have been aware of the family's counsel's Motion to Clarify and Modify from October 2017, in which counsel requested judicial clarification about whether the practice of borrowing against the UPS stock to pay the LMA's debt service obligations violated the Injunction, as well as the November 2017 Order from this Court unambiguously answering that question in the affirmative.

appropriate. To that end, the Court entered an Order (doc. 250) on August 20, 2020, following the Show Cause Hearing, affording the parties a short window of time to supplement the record with any additional evidence and/or argument they might deem appropriate. Specific filing dates were set, including a deadline of September 4, 2020 for the Browns to respond to SEPH's submission and file any supplemental materials of their own. In light of their *pro se* status and to ensure the gravity and urgency of the situation were properly conveyed to them, the September 4 Order cautioned the Browns as follows: "**This is the Browns' final opportunity to be heard before an order imposing contempt sanctions is entered against them for their knowing violation of the injunction.**" (Doc. 250.) SEPH timely filed a Supplement (doc. 252) setting forth supplemental argument and authorities, as well as appending exhibits showing both LMA statements and SEPH's counsel's billing records documenting the attorney's fees accrued in pursuing the contempt issue against the Browns. For their part, the Browns failed to respond to the August 20 Order, and their deadline for doing so expired nearly one month ago.[7]

"The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief. This may entail the doing of a variety of acts …." *EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1515 (11th Cir. 1987) (citation omitted). "The purpose of civil contempt sanctions is to (1) compensate the complainant for losses and expenses it incurred because of the contemptuous act, and (2) coerce the contemnor into complying with the court order." *Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1557 (11th Cir. 1996). In this case, a compensatory sanction appears to be the most appropriate equitable remedy. In that regard, "[c]ivil contempt may … be punished by a remedial fine, which compensates the party who won the injunction for the effects of his opponent's noncompliance." *Newman v. State of Alabama*, 683 F.2d 1312, 1318 (11th Cir. 1982).

---

[7] To be clear, the Browns filed nothing and did not contact the Court at any time prior to or even after expiration of the September 4 supplementation deadline. On September 1, 2020, however, SEPH filed a Notice to Court indicating that a person named Les Pittman had contacted SEPH's attorneys and advised them that "Mr. Brown has been in the hospital for 9 days and will not be able to make a filing by September 4, 2020." (Doc. 253.) The Court is aware of no reason why Ms. Brown could not have prepared a supplement or requested an extension of time, regardless of Mr. Brown's apparent hospitalization. She did neither. At any rate, the deadline expired more than three weeks ago, and the Browns have made no attempt to supplement the record or contact the Court in the interim. They have thus waived their right to be heard any further on the issues of contempt and contempt sanctions against them.

SEPH has demonstrated that it has been damaged in two respects by the Browns' violations of the Injunction. First, Ms. Brown's ongoing pattern of borrowing additional funds from the LMA, both through direct withdrawals (totaling $62,400 between January 2018 and November 2019) and adding debt service obligations to the account balance, has encumbered the UPS stock, thereby reducing the amounts available to satisfy SEPH's judgments against Charles Trammell and the defendants in this case. This wrongful dissipation of assets directly and materially harms SEPH; therefore, the Court agrees that a remedial fine equal to this amount is appropriate. That said, the Court adjusts the amount sought by SEPH to exclude debt service amounts for the months of September 2017 through November 2017, on the grounds that the Browns could reasonably have questioned whether the Injunction proscribed such borrowing to pay debt service obligations until the November 13, 2017 Order clarified that it did. The Court finds that a monetary sanction of **$98,126.96** is appropriate to compensate SEPH for the Browns' improper "disposition" of UPS stock by borrowing that amount against those stock shares in the LMA between December 2017 and the present.[8]

Second, SEPH has been damaged in the form of the attorney's fees it has incurred in pursuing the contempt motions and enforcing the Injunction against the Browns. It is well settled that "in awarding sanctions for civil contempt, a court ha[s] numerous options, among them: a coercive daily fine, a compensatory fine, attorneys' fees and expenses." *In re Ocean Warrior, Inc.*, 835 F.3d 1310, 1319 (11th Cir. 2016) (citation and internal quotation marks omitted). That said, "attorneys' fees in a civil contempt proceeding are limited to those reasonably and necessarily incurred in the attempt to enforce compliance." *Abbott Laboratories v. Unlimited Beverages, Inc.*, 218 F.3d 1238, 1242 (11th Cir. 2000). The Court agrees with SEPH that an award of attorney's fees it reasonably and necessarily incurred in enforcing the

---

[8] This amount is calculated as follows: In its Supplement, SEPH shows that the loan balance on the LMA between September 2017 and present has increased in the total amount of $100,556.96 because of the Browns' violative conduct. Of that amount, $62,400 constitutes direct cash withdrawals by Ms. Brown between January 2018 and November 2019. The remaining $38,156.96 constitutes debt service increases to the loan balance between September 2017 and the present. Subtracting out the debt service borrowing for the three-month period from September 2017 through November 2017 for the reasons stated above, at an approximate monthly debt service amount of $810.00, results in a compensable debt service increase of $35,726.96 (or $38,156.96 minus $2,430.00, which is the approximate total of the three-month period that this Court has eliminated from the compensatory sanction). Adding $62,400 and $35,726.96 yields the $98,126.96 figure recited above.

Injunction and recovering the value of the UPS stock compromised by the Browns' longstanding pattern of contemptuous conduct is appropriate as part of sanction aimed at providing plaintiff with full remedial relief.  Moreover, upon review of SEPH's Supplement, to which the Browns have not objected or responded despite a full and fair opportunity to do so, the Court finds that the attorney's fees claimed by SEPH in that filing were reasonably and necessarily incurred in these contempt proceedings.  Accordingly, the sanction against the Browns will include the sum of **$25,637.00** for attorney's fees.

V.      **Conclusion.**

For all of the foregoing reasons, it is **ORDERED** as follows:

1. Defendant Amy Brown and Lance Patrick Brown are held in **CIVIL CONTEMPT** for their multi-year pattern of violating the injunction entered by this Court prohibiting them from disposition of fraudulently transferred shares of UPS stock being used as collateral in a Loan Management Account at Merrill Lynch;
2. Plaintiff's Motion for Sanctions (doc. 241) is **GRANTED**;
3. As a sanction for their contemptuous conduct, Amy Brown and Lance Patrick Brown are **ORDERED**, jointly and severally, to pay a compensatory fine and attorney's fees to SEPH in the total amount of **$123,763.96**, including $98,126.96 for their contemptuous dissipation of UPS stock shares used as collateral in the Loan Management Account and $25,637.00 for SEPH's attorney's fees reasonably and necessarily incurred in these contempt proceedings; and
4. The Clerk's Office is directed to mail a copy of this Order to the Browns at their address of record.

DONE and ORDERED this 1st day of October, 2020.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE